**UNITED STATES of America,
Appellant,**

v.

**Jamiel CHAGRA, Defendant, Appellee.**

**No. 80–1708.**

United States Court of Appeals,
First Circuit.

Argued May 8, 1981.

Decided June 30, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 21, 1981.

Janis M. Berry, Asst. U.S. Atty., Boston, Mass., with whom Edward F. Harrington, U.S. Atty., Boston, Mass., was on brief, for appellant.

Oscar B. Goodman, Las Vegas, Nev., for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

This case involves a series of "double jeopardy" questions arising out of defendant's conviction in Texas for violating 21 U.S.C. § 848, which imposes heavy penalties upon those who engage in a drug-related "continuing criminal enterprise." Does an indictment under § 848 charge a single continuing offense that encompasses all drug-related felonies that might have been used to prove that defendant was engaged in the "enterprise"? If so, does a conviction bar a subsequent prosecution for drug-related felonies that might have been, but were *not*, used to prove the § 848 violation? The district court answered these questions affirmatively and dismissed a four count indictment charging defendant with conspiracy to import, importing, conspiracy to possess, and possessing marijuana—all in Massachusetts. *United States v. Chagra*, 494 F.Supp. 908 (D. Mass. 1980), as modified at September 29, 1980 hearing, at transcript pages 7–9. We disagree with the district court and reverse its dismissal of the indictment.

I.

Section 848 states that a person "who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment" of 10 years to life, a fine of up to $100,000 and forfeiture of all profits from the enterprise. It then defines the violation more specifically: A person engages in a continuing criminal enterprise if (1) he violates any felony provision of the Comprehensive Drug Abuse Prevention and Control Act or the Controlled Substances Import and Export Act, and (2) the violation is part of a continuing series of violations undertaken in concert with five or more other persons, he organizes, manages or supervises those others, and he derives substantial income from the activity.[1] The courts have

---

1. Section 848 provides in part:

(a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have

defined "continuing series" to mean three or more violations. *United States v. Valenzuela*, 596 F.2d 1361 (9th Cir. 1979). Thus, the statute is aimed at drug ring managers or "kingpins", and it defines their role in terms of supervising others while engaged in three or more drug felonies.

The government indicted Chagra, the defendant, in the Western District of Texas on July 31, 1979.[2] The first three counts of the indictment charged conspiracies to import marijuana and cocaine and possession of cocaine, all in 1977. The fourth count charged a violation of § 848. It alleged that Chagra committed fourteen relevant underlying drug felonies between April 1974 and April 1978, in concert with at least five other persons whom he organized, managed or supervised. These fourteen consisted of those charged in the first three counts and eleven others, seven of which took place in 1977 or 1978, one of which took place on December 30, 1976, and three of which took place in 1974. After trial, Chagra was convicted on counts three and four. He was sentenced to thirty years imprisonment on count four (the § 848 count).[3] His appeal from that conviction is currently pending.

In May 1980, Chagra, together with twenty other persons, was indicted in Massachusetts for offenses centered upon the importing of 54,000 pounds of marijuana at Folly Cove, Gloucester in July 1975. Counts one and three of the four count indictment against Chagra charged him with conspiring to import and to distribute marijuana during 1975. Counts two and four charged him with importing and possessing marijuana at Folly Cove in July 1975.

In July 1980, the district court considered defendant's motion to dismiss the Massachusetts indictment on grounds of double jeopardy. The court agreed with the government that these charges and the Texas charges were different: the facts alleged were different, the times of the specific actions charged were different, the evidence was different. Nonetheless, the court reasoned that the events charged in Massachusetts "fall squarely within the period of continuous violations charged in the Texas indictment." Moreover, the Texas indictment referred to violations committed in "divers other places to the grand jurors unknown." And, evidence of the Massachusetts violations might have been admitted in Texas to show additional felonies underlying the § 848 charge. Therefore, the court severed and continued counts one and three (the conspiracy counts). The court proceeded with counts two and four, reasoning that they could not have been charged in Texas because venue would not have been proper there; but subsequently, the district judge changed his mind about the importance of lack of venue. Then, to simplify the case, while expediting appeal, the parties agreed to conduct a bench trial.

become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).

(2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—

(A) the profits obtained by him in such enterprise, and

(B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

*Continuing criminal enterprise defined*

(b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

2. This opinion refers to the Superseding Indictment, renumbered by order of the Texas district court to remove certain counts withdrawn from consideration by the jury.

3. Fifteen of these thirty years were to be served concurrently with his sentence on count three.

The court found Chagra guilty on counts two and four and sentenced him; it then vacated that determination; it also vacated the order severing counts one and three; and it dismissed all four counts on grounds of double jeopardy. The government appeals from this latter determination.

## II.

The "double jeopardy" clause of the fifth amendment states "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The issue here is whether the Texas and Massachusetts proceedings involve "the same offence". We hold that they do not.

As an initial matter, a common sense reading of the two indictments, together with the facts as stipulated and the record of the Texas proceedings as described, suggests that the two sets of charges do not grow out of a single criminal act, occurrence, episode or transaction. *See Brown v. Ohio*, 432 U.S. 161, 170, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) (Brennan, J., concurring). For one thing, the times during which specific activities allegedly occurred differed. The Massachusetts violations all took place in 1975. The Texas offenses took place in 1977, 1978, in December 1976 and in 1974. For another thing, those involved in the two offenses are different. With the exception of Chagra himself, none of the twenty-one persons mentioned in the Massachusetts indictment were referred to in any part of the Texas indictment. Further, the places differ. The Texas indictment does not refer to Massachusetts, nor is there any reason to believe that the cryptic phrase, "divers other places to the grand jurors unknown", masked an overlap of geographical areas. *See United States v. Papa*, 533 F.2d 815, 822 (2d Cir. 1976). In addition, the evidence used to prove the offenses differed. Apart from a passing reference to Massachusetts (which the district court found insignificant) no evidence about the Massachusetts offense was introduced into the Texas proceeding; and, a reading of the stipulated Massachusetts facts indicates that evidence of the Texas offenses did not help to prove the Massachusetts charges.

Given these differences, a claim of double jeopardy ordinarily could not be sustained even if the offenses charged in the two indictments had been the same. If, for example, conspiracies to possess, or to distribute, or to import, controlled substances had been charged in both indictments, the factors set out above indicate they would have been considered separate, free-standing conspiracies, for which separate indictments, trials and punishments are proper. *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978); *United States v. Stricklin*, 591 F.2d 1112, 1122–23 (5th Cir. 1979); *United States v. Papa, supra*. The fact that the offenses charged here arise under *different* statutory provisions would ordinarily weaken the case for "double jeopardy" still further, *see United States v. Marable, supra*.

Defendant here, however, argues that the *special* relation between § 848 and the drug felonies that potentially underlie a § 848 charge creates double jeopardy where otherwise none would exist. He argues that these latter violations are all "lesser included offenses" in the § 848 "continuing criminal enterprise". The government, he argues, cannot indict him for both the "enterprise" and any contemporaneous offenses that *might* have constituted a part of that enterprise, whether or not those lesser offenses were "free standing" in relation to each other. *See United States v. Mannino*, 635 F.2d 110 (2d Cir. 1980).

Essentially, defendant is making a "unit of prosecution" point. It has long been the law that a prosecutor cannot divide a continuing crime into bits and prosecute separately for each. In 1777, for example, Lord Mansfield held that a statute prohibiting working on Sunday allowed the Crown to convict a baker only once for baking four loaves of bread on one Sunday; it could seek only one penalty of five shillings; it could not convict him four times, once for each loaf, and fine him one pound. *Crepps v. Durden*, 2 Cowper's Reports 640, 98 Eng.Rep. 1283 (K.B.1777). In the nine-

teenth century, the Supreme Court held that the federal government could prosecute a Mormon only once for cohabiting for three years straight with more than one woman as his wife; it could not prosecute him three times, once for each year. *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). Just as the man who steals $100 from a billfold can be prosecuted once for the $100 theft and not ten times for ten $10 thefts, so, in defendant's view, he can be prosecuted only once for all those violations so interrelated that they make up a single "continuing criminal enterprise". The very fact that the Massachusetts violation *might* have been introduced into the Texas proceeding shows that it bears the necessary relation to the other violations [4] that were introduced as underlying felonies, and it is thus part of the single prosecutable unit "enterprise".

Defendant draws additional force for his argument from *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). In that case, defendant had previously been convicted of cohabiting with more than one woman as his wife for a period up to May 13, 1888. The Court held that he could not subsequently be prosecuted for adultery on May 14, 1888, with one of these women because the cohabitation charged (which as a prosecutable unit lasted through May 14 and beyond) included as a necessary incident the adultery that was charged. The Supreme Court there wrote that the case illustrated the proposition of *Morey v. Commonwealth*, 108 Mass. 433, 435 (1871), in which Mr. Justice Gray wrote: "A conviction of being a common seller of intoxicating liquors has been held to bar a prosecu-

tion for a single sale of such liquors within the same time, upon the ground that the lesser offense . . . is merged in the greater offense . . . ." *In re Nielsen*, 131 U.S. at 188, 9 S.Ct. at 676. The bar would presumably still stand in *Morey* even if the particular sale was not used as evidence in the "common seller" trial; the bar stood in *Nielsen* even though the adultery was not (and could not have been) used in evidence at the cohabitation trial. Defendant concludes that a conviction for the greater offense—the continuing criminal enterprise—bars a prosecution for any lesser drug offense that was *in fact* incident to it—whether or not used as evidence at the "enterprise" trial. While the district court accepted this argument, we do not, for reasons which follow.

### III.

It is not possible to determine whether or not the "double jeopardy" clause bars the Massachusetts indictment on the basis of defendant's logic alone. Even if defendant's argument were sufficient to make out some sense in which the Massachusetts charges would be called "lesser included", that fact would not tell us by itself when, whether or where additional punishment for, or trials upon, those charges is forbidden, *see Brown v. Ohio*, 432 U.S. at 169 n.8, 97 S.Ct. at 2227 n.8. The Massachusetts charges are not included in the § 848 offense as a matter of logic; the transactions at issue are factually separate; the Massachusetts violations were not used in evidence at the § 848 trial; and there is no indication that the prosecutor deliberately

---

**4.** Defendant points to *United States v. Mannino*, 635 F.2d 110, 117 (2d Cir. 1980) for additional support for this view. There, an isolated drug pickup in Florida in 1975 was included among the series of transactions constituting a § 848 continuing criminal enterprise centered in Brooklyn in 1978–79. There was no factual overlap with the other transactions making up the enterprise other than the defendant's role as orchestrator of each. The court termed it a "less structured enterprise" than those involving well-defined chains of command under the control of a "king-pin". *United States v. Mannino*, 635 F.2d at 117. It appears that Mannino

acted "in concert" with an associate in Florida separately from his actions "in concert" with others in Brooklyn. Whether or not *Mannino* is consistent with the "in concert" requirement as interpreted in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), is unclear. Regardless, the court in *Mannino* did not consider the issue presented here. In any event, as part III of this opinion indicates, there is no inconsistency in saying that a separate offense *might* be used as part of a § 848 trial, but if it is not so used, it can be prosecuted and punished separately.

separated the Massachusetts charges in order to have a second bite at the § 848 apple.[5] Further, an examination of the interests served by the "double jeopardy" clause and the legislative and prosecutorial interests served in allowing additional punishment and an additional trial suggests that the Massachusetts prosecution does not violate that clause.

The "double jeopardy" clause in part prevents a defendant from being punished more than once for the same crime. *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See* Westen & Drubel, *Toward A General Theory Of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 107–22, 156–63 (1979); Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 281–83 (1965). It also seeks to prevent a person from being tried twice for the same crime. In principle, these purposes are conceptually distinct, for one might, through the use of concurrent sentences, allow two trials but prevent two punishments. While the cases do not always distinguish the general policies that the clause serves, *Brown v. Ohio*, 432 U.S. at 166, 169 n.8, 97 S.Ct. at 2225, 2227 n.8, it is useful to do so here for purposes of analysis.

When courts have held that the "double jeopardy" clause prevents double sentencing, they have typically imposed restrictions upon the prosecutor's power to interpret a statute to allow multiple punishments; they have not restricted the legislature's power to enact such a statute. *Iannelli v. United States*, 420 U.S. 770, 791, 95 S.Ct. 1284, 1296, 43 L.Ed.2d 616 (1975); Westen & Drubel, *Toward A General Theory Of Double Jeopardy*, 1978 Sup.Ct.Rev. 81, 99–106, 112–22 (1979); Comment, *Twice In Jeopardy*, 75 Yale L.J. 262, 313–17 (1965). There is little doubt that the English Parliament could have made each Sunday sale of a loaf of bread a crime had it chosen to do so. Indeed, the legislature often allows cumulative punishment for an act, when it

violates several statutes (such as those forbidding possessing, distributing, or importing dangerous drugs). And, as the Supreme Court has suggested, a legislature could allow multiple cumulative punishments for, say, car theft and lesser included offenses (such as joyriding), if it chooses to do so. *Brown v. Ohio*, 432 U.S. at 169 n.8, 97 S.Ct. at 2227 n.8; *Bell v. United States*, 349 U.S. 81, 82–83, 75 S.Ct. 620, 621–622, 99 L.Ed. 905 (1955) ("Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported." Congress can "make each stick in a faggot a single criminal unit." (Frankfurter, J.)). When multiple punishments are at issue, the "double jeopardy" clause seems to require the legislature to speak clearly before imposing additional punishment. *Id.* But, where a clear and reasonable intent can be determined from the statute, the clause does not appear to stand in the way of its implementation. *Gore v. United States*, 357 U.S. 386, 390–91, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958) ("If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter [on narcotics offenders]" (Frankfurter, J.)).

In this instance, there is good reason to believe that Congress intended § 848 offenses and underlying violations that were not specifically charged in the § 848 proceeding to be punished cumulatively. First, § 848 was deliberately intended as a harsh statute providing particularly severe punishments for multiple offenders. It originated in a provision that was designed to provide severe sentences for professional criminals fitting the status of "dangerous special offenders" and, as enacted, the legislation separately defined a continuing criminal enterprise as a new offense and imposed harsh penalties. H.R.Rep.No. 1444, 91st Cong.2d Sess. (1970), U.S.Code Cong. &

---

5. A passing, hearsay reference was made at the Texas trial by one witness, Mr. Wallace, to a Boston deal to import marijuana. The district

court considered this and ruled that "evidence of this [Massachusetts] case was not really introduced into that Texas trial."

Admin.News 1970, p. 4566; *see also* 116 Cong.Rec. 995 (1970) (remarks of Sen. Dodd); *id.* at 1181 (remarks of Sen. Thurmond); *id.* at 33631 (remarks of Rep. Weicker); *id.* at 33314 (remarks of Rep. Bush). While its history might suggest an intent not to punish for both the § 848 violation and the offenses used to prove that violation, *see Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), there is no evidence of any intent to forego additional punishment for underlying offenses not so used. Second, to accept defendant's interpretation of the statute would undercut the very "anti-drug" philosophy that § 848 embodies. On defendant's view, once a person committed sufficient underlying offenses to "qualify" for § 848, he would have diminished incentive to stop committing offenses. Cumulative punishment for additional underlying offenses, on the other hand, would provide a continuous incentive for him to stop engaging in drug-related activity. Third, to accept defendant's interpretation would create a serious problem of enforcement. Prosecutors would soon realize that if they bring a § 848 prosecution and lose, they will have immunized defendants not only as to the underlying offenses they actually tried to prove, but also as to all related drug offenses committed during the "enterprise" period charged. They may well hesitate to run such a risk, weakening the deterrent effect of the statute.

Similarly, even if cumulative punishments were not allowed,[6] there would be good reasons for allowing separate *trials* in Massachusetts and Texas. The logistical reasons for trying this case in Massachusetts are strong: the crime took place here, the evidence is likely to be here, and there are twenty other defendants who may be most easily tried in Massachusetts. Moreover, in this instance, it is not legally possible to try Chagra on counts two and four in Texas. U.S. Const. Amendment VI; Fed.R. Crim.P. 18; *United States v. Black Cloud*, 590 F.2d 270 (8th Cir. 1979). Thus, the

legislative and prosecutorial interests favoring both cumulative trials and cumulative punishments are strong.

At the same time, it is difficult to find interests underlying the "double jeopardy" clause with which double trials or punishments would significantly interfere. There is no possibility here of cumulatively punishing defendant for engaging in the same underlying activity. *United States v. Stricklin*, 591 F.2d at 1123. Neither the judge nor the jury in the Texas proceeding could have used Chagra's Massachusetts activity as a basis for assessing his punishment, for they did not know about that activity. Chagra is not being required to relitigate any actual circumstances at issue in the first trial. He does not have to fear, or listen to, or prepare a defense for, the presentation of a single set of facts on more than one occasion. *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). To try Chagra in Massachusetts violates no "finality" policy favoring the absolute inviolability of a jury acquittal *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). Since the facts presented in Massachusetts are totally different from those presented in Texas, there has been no opportunity for a jury to assess them favorably or unfavorably. Nor is the prosecutor being given a second opportunity to increase the punishment assessed for a single set of activities. *Illinois v. Somerville*, 410 U.S. 458, 469, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973). Finally, there is here no improper delegation of the sentencing power from the legislature to the prosecutor. The legislature, for reasons pointed out above, is likely to have intended cumulative punishment in the circumstances here described. *Gore v. United States, supra.*

The authority on the question would seem to support the conclusion that double jeopardy does not bar the Massachusetts prosecution. In *Jeffers v. United States, supra*, the Supreme Court strongly suggest-

---

**6.** In *Jeffers v. United States, supra*, where the Court found that the legislature did not intend multiple punishment, it held that Jeffers was

constitutionally entitled to credit on a § 848 offense for the sentence he had already received on a lesser included offense under § 846.

ed that § 846, forbidding conspiracies to distribute drugs, was a "lesser included offense" in respect to § 848. The Court reasoned that the word "concert" in § 848 was intended "to have its common meaning of agreement in a design or plan". Thus, proof of the § 848 violation would automatically show a violation of § 846. "So construed, section 846 is a lesser offense of section 848 because section 848 requires proof of every fact necessary to show a violation under section 846 as well as proof of several additional elements." *Jeffers v. United States*, 432 U.S. at 150, 97 S.Ct. at 2215. On the basis of this test, the Massachusetts violation is not a lesser included offense, because proof of the Texas violation did not prove *any* of the facts necessary to show the Massachusetts violations, let alone *all* of them. Indeed, were defendant's theory the law, the Court's analysis in *Jeffers* of the relation of actions "in concert" to "conspiracy" would have been completely unnecessary, for it was obvious that the § 846 offense there at issue might have been used as one of the underlying § 848 violations. Rather, the analysis became necessary because the *same facts* were used to show *both* § 848 and § 846 offenses; the issue was whether Jeffers could be punished separately for two offenses stemming from these *same facts*; and the Court held it could not.

In *Brown v. Ohio, supra,* the Supreme Court held that Ohio could not prosecute a defendant first for stealing a car and then for joyriding. The offense of joyriding was identical to that of auto theft except that the latter required proof of an intent not to return. Thus, "joyriding" was a lesser included offense. Under these circumstances there could be only one prosecution for a single act of taking and keeping an auto for nine days. But, the court cautioned, "We would have a different case if the Ohio Legislature had provided that joyriding is a separate offense for each day in which a motor vehicle is operated without the own-

er's consent. *Cf. Blockburger v. United States,* 284 U.S. [299] at 302 [52 S.Ct. 180, at 181, 76 L.Ed. 306]." *Brown v. Ohio,* 432 U.S. at 169 n.8, 97 S.Ct. at 2227 n.8. Indeed, in the latter instance, the Court would have been faced with a legislative intent to increase the punishment for each additional day the car was kept—a rational purpose aimed at encouraging a thief to return the car. There is reason to believe that Congress here similarly intended additional punishments for additional drug felonies. Thus, the implication in *Brown v. Ohio,* that double jeopardy does *not* apply in such a case, would seem to fit the facts here before us.

*In re Nielsen, supra,* on which defendant so heavily relies, is distinguishable. In that case, there was no ascertainable legislative purpose served in punishing a man both for living with more than one woman as his wife (cohabitation) and for the "lesser included" adultery, nor for cumulating punishment by punishing each adulterous act separately.[7] Though one could argue that doing so would also discourage continued cohabitation, it would also have produced a possible punishment for cohabitation vastly out of proportion to what the legislature might reasonably have had in mind in enacting the cohabitation statute. Here, on the other hand, the cumulative punishment for additional drug violations, not included in the original § 848 charge, would not produce a similar disproportionate penalty, given the legislature's concerns as revealed in the statute's history.

■ Thus, reasons of policy and precedent suggest the absence of "double jeopardy" here. The ordinary meaning of the words "same offence" in the fifth amendment, given the very different underlying facts in the two indictments, also suggests that the "double jeopardy" clause does not apply to this case. We therefore reject defendant's claim that double jeopardy automatically attaches to underlying offenses

---

7. Mr. Justice Bradley explicitly considered the different legislative purposes behind the anti-polygamy statute, and noted that Nielsen was being brought to trial on the same underlying facts in the two indictments—which is not the case here. *In re Nielsen,* 131 U.S. at 177, 188–89, 9 S.Ct. at 673, 676–677.

**34**

that might have been used to help prove a
§ 848 violation—when those violations were
not in fact so used.[8]  We hold that there is
no double jeopardy here and that the Mas-
sachusetts indictment must be reinstated.

*Reversed.*

---

**8.** Defendant also argues that he should be al-
lowed to prove that the underlying facts in the
Texas and Massachusetts prosecutions are
overlapping.  We have not reviewed the Texas
transcript which was offered to, but not accept-
ed by, the district court.  Yet, we have re-
viewed the stipulation of Massachusetts facts
and the Texas indictment, and we note that the
parties have had the opportunity to present to
the district court instances of overlap.  On the
basis of what has been presented we do not
believe that defendant has made out a *prima
facie* case of possible double jeopardy.  *United
States v. Stricklin*, 591 F.2d at 1122–23.