COMMONWEALTH vs. GUY H. LEVIA.

Worcester. November 3, 1981. — February 23, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

Robbery. Constitutional Law, Double jeopardy, Assistance of counsel. Practice, Criminal, Assistance of counsel.

A judge properly imposed consecutive sentences on a defendant convicted on two indictments for armed robbery, which arose from a single episode and which charged him with placing in fear two employees of a store and taking from each victim money belonging to the store, where each victim had protective concern with the property taken and the property was taken from his person or presence. [347]

A defendant convicted of armed robbery was not entitled to a new trial on the basis that his trial counsel's failure to seek suppression of a witness's identification testimony showed that he had been denied his right to the effective assistance of counsel, where the judge concluded, from counsel's affidavit, that his action was a result of a decision to exploit weaknesses in the witness's testimony on cross-examination, rather than to seek suppression, and such tactics were not unreasonable in the circumstances [351-353]; nor was a new trial required by reason of the judge's failure to order a voir dire on his own initiative to determine whether the identification was the product of an impermissibly suggestive confrontation, where trial counsel's action could fairly be interpreted as a deliberate and reasonable tactical decision [353-355].

INDICTMENTS found and returned in the Superior Court Department on May 9, 1979.

The cases were tried before Hallisey, J., and motions for a new trial and to correct sentence were heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

David C. Casey for the defendant.

Daniel F. Toomey, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The defendant was convicted, after a Superior Court jury trial, on two indictments for masked armed robbery and was sentenced to two consecutive ten-year terms at the Massachusetts Correctional Institution at Concord.  He filed a motion for a new trial and a motion to correct sentence, Mass. R. Crim. P. 30 (a), (b), 378 Mass 900 (1979), both of which were denied by the trial judge.  The defendant appeals the denial of his motion for a new trial; the question presented by the motion to correct sentence has been reported by the judge.[1]  We transferred the case to this court on our own motion.  We affirm the judge's rulings.

The evidence at trial showed that on February 24, 1979, at approximately 8 P.M., a man wearing a mask and carrying a pistol entered a Cumberland Farms store.  Two employees, Lorie Lawrence and James Westbury, were in the store at the time, standing behind the counter.  The man pointed the pistol at them and demanded money.  Westbury, who worked the gasoline pumps located outside the store, gave him the money he had in his pocket from selling gasoline.  Lawrence took the money that was in the cash register and gave it to the man, who then ran out of the store.  All the money taken belonged to Cumberland Farms.

The sole issue at trial was the identity of the robber.  Lawrence, who had seen the defendant on prior occasions and knew him by name, told Westbury, and later the police, that she thought the defendant was the person who had robbed the store.  At the police station she was shown an array of photographs, and she selected the defendant's picture from among them.  Westbury did not know the defendant, and when shown the same photographs, he failed to select the defendant's picture.  The police then showed Westbury a photograph of the defendant and told him that Lawrence had picked out this photograph as depicting the man who robbed them.  Westbury was still unable to make a positive identifi-

___

[1] The judge purported to report the question pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1975), and G. L. c. 231, § 111.  We treat the report as properly before us pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979).

cation. Later, however, when Lawrence and Westbury were at the Uxbridge District Court waiting for the probable cause hearing, Lawrence asked Westbury if he could pick out the man who robbed the store from the fifteen or twenty other people in the room. Westbury then identified the defendant as the man who had robbed them. At the probable cause hearing itself, and also at trial, Westbury again identified the defendant as the robber. The defendant's trial counsel did not move to suppress the evidence of Westbury's identification of the defendant, and failed to object to its admission at trial or to request limiting instructions.

1. *Motion to correct sentence.* The defendant was convicted and sentenced on two indictments of masked armed robbery — one for robbery from the person of Westbury, and one for robbery from the person of Lawrence. The defendant contends that there was but one robbery, and that it was therefore error for the judge to impose two separate and consecutive sentences. He argues that where, as here, property belonging to a single entity is taken by force or violence from more than one person in the course of a single incident, only one "robbery" has occurred, and thus only one sentence may be imposed.

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits punishing a person twice for the same offense. *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). However, few, if any, limitations are imposed by that clause on the legislative power to define offenses. *Sanabria* v. *United States*, 437 U.S. 54, 69 (1978). See *Ladner* v. *United States*, 358 U.S. 169, 173 (1958). The appropriate inquiry, then, is whether the Legislature intended that the putting in fear and taking from two individuals money belonging to a single entity would constitute one robbery or two, where the taking occurred during the course of a single episode. The Commonwealth argues that the armed robbery statute, G. L. c. 265, § 17,[2] was designed to protect people, and that the crucial

---

[2] General Laws c. 265, § 17, as appearing in St. 1952, c. 406, § 1, states in pertinent part: "Whoever, being armed with a dangerous weapon, as-

element of robbery for the purposes of this case is the assault. The defendant argues that the larceny element of the offense should control, and that since the money of a single entity was taken, there was but one robbery.

It is noteworthy that the armed robbery statute, G. L. c. 265, § 17, is found under the chapter of the General Laws entitled "Crimes against the Person," rather than under the chapter (c. 266) entitled "Crimes against Property." In addition, the Legislature has not imposed different statutory penalties for robbery according to the value of the property taken, as it has with respect to the crime of larceny (see G. L. c. 266, § 30), thus suggesting that it was not so much concerned with the larceny aspect of the crime of robbery as with its assault aspect.

In construing the armed robbery statute, this court has previously stressed the assault aspect of the crime. In *Commonwealth* v. *Weiner*, 255 Mass. 506 (1926), the defendant claimed that no robbery had been committed where the property taken did not belong to the person against whom the threat or force was used. In affirming the conviction, the court stated, "The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property of any value whatsoever, with the intention of stealing it, from the protection which the person of that other affords. . . . It is not affected by the state of the legal title to the goods taken." *Id.* at 509. In *Commonwealth* v. *Berryman*, 359 Mass. 127 (1971), this court was faced with facts similar to the case at bar, except that the defendant was given concurrent sentences. The court refused to overturn the defendant's conviction under multiple indictments for armed robbery, stating, "Each indictment

saults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years . . . ."

General Laws c. 277, § 39, as amended through St. 1980, c. 459, § 8, defines robbery as "[t]he taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal."

alleged a separate and distinct offence on which the jury could have found him guilty or innocent. . . . Even if we were of opinion that the Commonwealth was precluded from prosecuting the defendant under multiple indictments, simply because there were four bank employees robbed, this would be rendered harmless by reason of the concurrent sentences." (Citations omitted.) *Id*. at 131.[3]

The defendant argues that *Commonwealth* v. *Stewart*, 365 Mass. 99 (1974), supports his position. There the defendant and an accomplice robbed a supermarket, assaulting the night manager and a meat cutter. Money was taken from a safe by the defendant's accomplice, and not from the person of either employee. The indictment charged the defendant with robbery of money from the person of the meat cutter, and the defendant alleged that the indictment was for this reason defective, since the night manager, not the meat cutter, was responsible for the money in the safe. The court affirmed the conviction, and held that an indictment for armed robbery is sufficient so long as the victim named in the indictment had "some protective concern" for the property taken, and the property was taken from the victim's person or presence. *Id*. at 108. See also *Commonwealth* v. *Subilosky*, 352 Mass. 153, 165-166 (1967). The defendant argues that by implication *Stewart* recognizes that on the facts of that case there was but a single robbery. However, in that case the court was concerned with defining the victims of the crime; the court was not defining the crime itself. The result and reasoning in *Stewart* is equally valid whether the circumstances are considered to give rise to two statutory offenses or one.

We are not persuaded by those cases that have reached a conclusion contrary to the one we reach here. See *People* v.

---

[3] More recently, this court has disapproved the practice of finding harmless error where concurrent sentences were imposed. *Commonwealth* v. *Jones*, 382 Mass. 387, 395-396 (1981).

Because of the alternate holdings in *Commonwealth* v. *Berryman*, 359 Mass. 127 (1971), and the brevity of its reasoning, we do not rely solely on that case to decide the issue here.

*Nicks*, 23 Ill. App. 3d 435, 442 (1974); *Rogers* v. *State*, 272 Ind. 65, 75-76 (1979); *Williams* v. *State*, 271 Ind. 656, 666-669 (1979) (but see *Lash* v. *State*,        Ind. App.     , -        [1981] [414 N.E.2d 338, 343-344 (Ind. App. 1981)]); *State* v. *Potter*, 285 N.C. 238, 251-254 (1974); *State* v. *Perkins*, 45 Or. App. 91 (1980). See also *State* v. *Ballard*, 280 N.C. 479 (1972); *State* v. *Clemmons*, 35 N.C. App. 192 (1978). The North Carolina courts, in the above-cited cases, concluded, and the defendant here argues, that the existence of a single robbery is demonstrated by the application of a "same evidence" test similar to that employed in this Commonwealth for determining whether one offense is included within another.[4] See *State* v. *Clemmons, supra* at 196. It is reasoned that because the same facts concerning the robbery of the store would be sufficient to convict the defendant of robbing the store money from any of the employees present and threatened, the "same evidence" test bars multiple convictions, thereby indicating that a single offense occurred. But we think that this logic is faulty. It assumes from the start that the "robbery" is of the entity to which the money belongs, not the persons assaulted. If, on the other hand, it is assumed that the robbery is of the persons assaulted, it is apparent that the evidence used to convict the defendant of assaulting and stealing money from the person of "Lorie Lawrence" would not be sufficient to support a conviction for the assault and stealing of money from the person of "James Westbury," without proof of additional facts, viz., that money was taken from the person or presence of James Westbury and that he had some protective concern for the money. See *Kuklis* v. *Commonwealth*, 361 Mass. 302 (1972); *Commonwealth* v. *Mahoney*, 331 Mass. 510 (1954). The "same evidence" test therefore does not help in defining the offense.

In light of the emphasis that the General Court and this court have placed on the assault element of the crime of rob-

---

[4] The same evidence test inquires "whether each crime requires proof of an additional fact that the other does not." *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981), and cases cited.

bery, we conclude that the "offense" is against the person assaulted, and not against the entity that owns or possesses the property taken. See *Barringer* v. *United States*, 399 F.2d 557 (D.C. Cir. 1968), cert. denied, 393 U.S. 1057 (1969); *State* v. *Shoemake*, 228 Kan. 572, 576-577 (1980). So long as the victim of the assault has some protective concern with respect to the property taken, and the property is taken from his person or presence, then the defendant may be convicted and sentenced for a separate and distinct robbery as to that person. See *Commonwealth* v. *Stewart, supra*. If indictments or counts for the robbery of numerous persons are unreasonably multiplied, the judge, in superintending the course of trial and in passing sentence, will act accordingly to prevent oppression. See *Commonwealth* v. *Sullivan*, 104 Mass. 552 (1870). See also *Commonwealth* v. *Benjamin*, 358 Mass. 672, 677-678 (1971). Successive trials on indictments arising out of the same transaction will be discouraged by the Commonwealth's general policy of trying all such charges together, see *Commonwealth* v. *Cruz*, 373 Mass. 676, 690 (1977), and cases cited, and by principles of collateral estoppel, see *Ashe* v. *Swenson*, 397 U.S. 436 (1970). If in a particular case these do not suffice to prevent oppression, it may be that, absent special circumstances, basic principles of fairness would preclude the Commonwealth from attempting successively to try a defendant for multiple offenses arising out of the same transaction. See *id.* at 448-460 (Brennan, J., concurring). Such a case is not before us now, however. There was no error in denying the motion to correct sentence.

2. *Motion for a new trial.* The defendant's motion for a new trial is based upon the contention that the live identification testimony of the victim Westbury was the product of an impermissibly suggestive photographic confrontation, and was therefore excludable. See, e.g., *Commonwealth* v. *Storey*, 378 Mass. 312, 316-322 (1979), cert. denied, 446 U.S. 955 (1980); *Commonwealth* v. *Venios*, 378 Mass. 24 (1979). From this it is argued that trial counsel did not provide the defendant with effective assistance in that he failed

to inform himself of the circumstances surrounding the identification, and failed to move to suppress the evidence or object to its admission at trial. The defendant further argues that the judge at trial had a duty to act sua sponte and hold a voir dire hearing to determine the admissibility of the evidence. We need not decide whether the identification testimony of Westbury was excludable, for even if we determined that it were, we would not agree with the defendant's other arguments.

When ineffective assistance of counsel is alleged, the general standard used by this court is "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 410-413 (1979); *Commonwealth* v. *Adams*, 374 Mass. 722, 727-728 (1978).[5]

The defendant has not shown that trial counsel failed to inform himself of the circumstances surrounding the identification. The defendant has the burden of proving this fact. See *Commonwealth* v. *Brown*, 378 Mass. 165, 171 (1979); *Commonwealth* v. *Bernier*, 359 Mass. 13, 15 (1971). The affidavit of trial counsel and the proceedings at trial indicate that trial counsel was fully aware of the circumstances of the identification at the time of trial. In his affidavit counsel stated that at the probable cause hearing he "learned that . . . the identification testimony of the male victim was of suspect legitimacy and was likely suppressible." During

---

[5] The United States Supreme Court has not established a clear test for measuring the effectiveness of criminal trial attorneys for Sixth and Fourteenth Amendment purposes. The Courts of Appeals have fashioned divergent standards. See generally *Commonwealth* v. *Rondeau*, 378 Mass. 408, 411 n.3 (1979). The test enunciated in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), was the result of an effort "to bring some order into this doctrinal chaos." *Commonwealth* v. *Rondeau, supra* at 411.

the cross-examination of Westbury, trial counsel elicited, through the use of leading questions, the facts surrounding the photographic and live identifications. The form and content of the questions demonstrate that the examiner had prior knowledge of the facts. It is apparent that the judge, in denying the motion for a new trial, accepted as true the statements in the affidavit. This he was entitled to do. *Commonwealth* v. *Bernier, supra* at 16. *Commonwealth* v. *Heffernan,* 350 Mass. 48, 53, cert. denied, 384 U.S. 960 (1966). It was also proper for the judge to rely on his own knowledge of what took place at trial. *Id. Commonwealth* v. *Sacco,* 259 Mass. 128, 140 (1927).

The judge concluded that trial counsel failed to exclude the identification evidence for tactical reasons. This conclusion we are bound to accept, since it also was based largely on the affidavit of trial counsel. *Commonwealth* v. *Bernier, supra.* This does not, however, end our inquiry. *Commonwealth* v. *Williams,* 378 Mass. 217, 239 (1979). *Commonwealth* v. *Adams,* 374 Mass. 722, 728-729 (1978). "Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial." *Beasley* v. *United States,* 491 F.2d 687, 696 (6th Cir. 1974). See *Commonwealth* v. *Adams, supra.* "Review of tactical decisions is not, however, 'to be made with the advantage of hindsight, and any violation of the attorney's duty must be both substantial and prejudicial.'" *Commonwealth* v. *Williams, supra,* quoting from *Commonwealth* v. *Adams, supra* at 729.

In the circumstances of this case, we do not think that trial counsel's strategy was "manifestly unreasonable." *Commonwealth* v. *Adams, supra* at 728. No alibi defense was available,[6] and the defendant was faced at trial with the

---

[6] In addition to the claim involving the failure to suppress the identification testimony, the defendant's motion for a new trial also alleged that

prospect of attempting to impeach the relatively strong identification testimony of Lawrence. According to trial counsel's affidavit, he decided not to attempt suppression of Westbury's identification testimony, but instead to attack the testimony on cross-examination. He hoped to exploit the weaknesses of Westbury's testimony, so that the damage done to Westbury's credibility would spill over to and thereby weaken the more powerful identification testimony of Lawrence. It was within the discretion of the judge to believe these statements. We note that trial counsel conducted an extensive cross-examination of Westbury, with appropriate comment during final argument on the weaknesses of his identification testimony. In these circumstances trial counsel's decision not to attempt to suppress the identification evidence was not unreasonable. *Commonwealth* v. *Underwood*, 358 Mass. 506 (1970). *Commonwealth* v. *Chavis*, 7 Mass. App. Ct. 912 (1979). *Commonwealth* v. *Meggs*, 4 Mass. App. Ct. 773 (1976).

Our conclusion that trial counsel's strategy was reasonable compels us to reject the defendant's suggestion that the trial judge should have ordered sua sponte a voir dire to determine whether the identification was impermissibly suggestive. Assuming it would have been error to admit the identification evidence over the defendant's objection, the judge nevertheless could not be expected to abdicate his traditional position of impartiality and interject himself into the trial in the manner of cocounsel for the defendant. *Commonwealth* v. *Underwood, supra* at 511. This is especially so where, as here, the failure to assert constitutional rights may fairly be interpreted by the trial judge as a deliberate and reasonable tactical decision by trial counsel. The

---

trial counsel had failed to explore an alibi defense, thereby depriving him of effective assistance of counsel. The affidavit of trial counsel stated, and the judge found, that counsel was never made aware of the alleged alibi and therefore had no cause to investigate it, and, further, that even if he had been made aware of the possibility, trial counsel could reasonably fear that the alibi's transparency would alienate the jury. The defendant does not challenge these conclusions here.

burden of informing the judge and subsequent courts of review of alleged errors in the admission of evidence must necessarily rest upon trial counsel. Only where there is a "substantial risk of a miscarriage of justice" will we disregard this rule. *Commonwealth* v. *Harris*, 371 Mass. 462, 471 (1976), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). No such risk is apparent here. The powerful identification testimony of Lawrence and the lack of any alibi defense indicate the strength of the Commonwealth's case. For this reason *Commonwealth* v. *Harris, supra,* upon which the defendant relies, is distinguishable. There was no error in denying the motion for a new trial.

We affirm the order denying the motion for a new trial and the order denying the motion to correct sentence.

*So ordered.*