John TARRANT, Petitioner,

v.

Joseph PONTE, et al, Respondents.

Civ. A. No. 83–908–C.

United States District Court,
D. Massachusetts.

May 15, 1984.

Robert L. Sheketoff, Zalkind & Sheketoff, Boston, Mass., for petitioner.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., for Francis X. Bellotti and Ponte.

## MEMORANDUM

CAFFREY, Chief Judge.

This matter came before the Court on the report and recommendation of Magistrate Cohen relating to John Tarrant's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Magistrate recommends that the petition be denied. Petitioner has filed an objection to the Magistrate's report and recommendation.

Petitioner was convicted in July 1977 after a jury trial in Suffolk County Superior Court on one indictment for assault in a dwelling, one indictment for unlawful confinement, and two indictments for armed robbery. On each of the indictments for armed robbery and on the indictment for assault in a dwelling, petitioner was ordered to serve ten to fifteen years in prison; on the indictment for unlawful confinement, he was ordered to serve five to ten years in prison. All sentences were to be served concurrently at the Massachusetts Correctional Institution, Walpole. The Massachusetts Appeals Court affirmed the convictions, *Commonwealth v. Tarrant*, 14 Mass.App. 1020, 442 N.E.2d 31 (1982), and the Massachusetts Supreme Judicial Court denied further appellate review.

Petitioner filed a petition for writ of habeas corpus with this Court on April 6, 1983. He alleged that his conviction violated the Constitution on three grounds: first, that the trial judge improperly denied petitioner's motion for a six-day continuance prior to trial; second, that the trial judge improperly denied petitioner's motion for a competency examination and hearing before trial; third, that his conviction on two indictments for armed robbery violated the Double Jeopardy Clause.

### The Motion for Continuance

On Friday, July 8, 1977, the trial court called petitioner's case for trial. At that time, counsel for petitioner requested that

the trial court continue the proceedings until the following Thursday. The court refused, but granted a three-day continuance until Monday, July 11. Petitioner contends that the trial court's refusal to grant the requested continuance denied him the effective assistance of counsel, a fair trial, and due process of law.

The Magistrate concluded that the trial court's failure to order the requested continuance did not warrant the issuance of the writ because petitioner failed to allege that denial of the continuance had resulted in actual prejudice to him. "Indeed," the Magistrate notes, "at the hearing before this Court on the petition counsel for petitioner candidly conceded that petitioner could make no showing of actual prejudice." Petitioner does not challenge the Magistrate's recommendation.

■ A court will not presume that prejudice resulted "merely from a showing of shortness of preparation time." *United States v. Ritch*, 583 F.2d 1179, 1183 (1st Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). Rather, the petitioner bears the burden of alleging and establishing actual prejudice. *Id.; see also Lockett v. Blackburn*, 571 F.2d 309, 314 (5th Cir.), *cert. denied*, 439 U.S. 873, 99 S.Ct. 207, 58 L.Ed.2d 186 (1978).

■ Petitioner does not allege that denial of his motion for continuance prejudiced his defense in any way. Petitioner's counsel had represented him since the date of his arraignment, and the trial court granted him an additional three days to prepare his defense to the specific charges about to be tried. Petitioner's counsel cross-examined both witnesses called by the state, and moved to suppress the testimony of a police officer concerning the victim's positive identification of petitioner from police photographs. Moreover, petitioner does not allege that he was prejudiced in any way in presenting his own witnesses or tangible evidence at trial, though he chose, in fact, not to present any such evidence. Because petitioner has failed to allege or demonstrate actual prejudice resulting from the trial court's denial of his motion for continuance, I rule that his petition should be denied to the extent it attacks his conviction on this ground.

*The Motion for Psychiatric Examination*

On the morning of trial, petitioner's counsel moved the trial court to order a psychiatric examination to determine whether petitioner was competent to stand trial.[1] The trial court denied the motion. Petitioner claims that denial of the motion deprived him of due process and a fair trial.

■ Conviction of an accused person while he is legally incompetent violates due process. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). A court must conduct an inquiry into defendant's mental capacity if the evidence before it raises a bona fide doubt as to the defendant's competency. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Where a trial court has refused to order further procedures to determine whether the defendant is competent to stand trial, a reviewing court must ask "whether, in light of what was ... known [prior to trial and thereafter], the failure to make further inquiry into petitioner's competence to stand trial, denied him a fair trial." *Drope v. Missouri*, 420 U.S. 162, 174–75, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975).

The determination whether a defendant is competent to stand trial requires the trial court to consider a number of factors. As the Supreme Court has stated:

The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required .... There are, of course, no

---

1. Petitioner's counsel made no motion for a competency examination when the case was initially called for trial on Friday, July 8. It was not until the case was called for trial again on Monday, July 11, that defense counsel moved the court to order a psychiatric examination.

fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

*Drope v. Missouri,* 420 U.S. at 180, 95 S.Ct. at 908.

The record in this case shows that petitioner displayed virtually no symptoms of mental incompetence prior to or during trial. The only .evidence bearing on petitioner's competence presented to the court prior to trial was a statement by petitioner's counsel. The full text of defense counsel's colloquy with the court is set out in the margin.[2]

Counsel told the trial court that he had met with petitioner at Massachusetts Correctional Institution, Walpole, on the previous night. He told the court that petitioner did not "relate to the reality of this situation" in a number of ways. He claimed, first, that petitioner had made "outrageous" statements during their meeting. He cited specifically defendant's statement that he believed that his arrest had been "set up" by the victim's boyfriend who was a police officer. However, many highly rational persons will engage in such speculation when faced with criminal prosecution, and evidence of such speculation is not, without more, sufficient to raise a

bona fide suspicion that defendant was, not competent to stand trial.

Second, counsel doubted petitioner's competency because petitioner was willing to go to trial rather than plea bargain, even though he would receive a relatively light sentence if he would plead. A defendant's decision, however, to exercise his constitutional right to proceed to trial, even against great odds, does not raise a presumption of incompetency. Finally, counsel noted that "some of [petitioner's] questions were quite rational and others were completely divorced from reality." So general an observation, even from defense counsel, is not sufficient as a matter of law to create a bona fide doubt as to petitioner's mental capacity.

There is no evidence in the record that petitioner engaged in any irrational behavior at trial or has engaged in any such behavior since that time. Moreover, petitioner's counsel reported to the trial judge that he was not aware that petitioner had experienced any prior mental illness.

■ I rule that the evidence presented to the trial court and to this Court, taken as a whole, is insufficient to raise a bona fide doubt as to petitioner's capacity to stand trial, and that the trial court did not deprive petitioner of due process or a fair

2. THE COURT: You tell me why this man should be examined on the eve of trial, Mr. Kelleher.

MR. KELLEHER: If it please the Court, I visited him at the Massachusetts Correctional Institution at Walpole last night. His responses to me were at times very coherent. Other times, they bordered on cunning and cupidity. Other times they were just outrageous. He would say things to me like, "This is a complete setup. This girl was going with a Boston cop and they are out to get me, and when I was arrested they come in and said this is the one that got your girlfriend." And in relating to him what the punishment is to the various offenses, and what the alternatives are relative to pleading and going to trial, jury or jury-waived, and relating to everything generally, his responses to me indicated that perhaps a psychiatric look might be in order relative to why he doesn't relate to the reality of this situation.

I am not saying whether he did or did not commit the crimes, but the question is if in fact

he did, and only he would know, and knowing what the maximum sentences are pursuant to law which were pointed out, that it would seem to be—it is almost suicidal to walk into gunfire knowing you are going to be shot down. And it almost seems to me that usefulness would be ended going over and over the same questions as to why his cases weren't dismissed, why they would hold him from November and then try him on one case in March and then decide to start again in July.

And some of it, as I say, some of his questions were quite rational and others completely divorced from reality. And just for the record, I filed this motion to protect the record and ask the Court to take a second look at it.

THE COURT: Is there any history of prior mental illness in this case?

MR. KELLEHER: Drug use but not that I am aware of.

THE COURT: Denied and the defendant's exception is saved.

Tr. 15–17.

trial by refusing to order a psychiatric examination.

### Conviction on Two Counts of Armed Robbery

Finally, petitioner alleges that his conviction on two counts of armed robbery violated his constitutional right not to be placed in jeopardy twice for the same crime.

The uncontradicted testimony of the victim shows petitioner's activities were as follows: On October 19, 1976, as the victim was leaving her apartment building at 10:20 p.m., she was accosted by a person she identified as the petitioner. The petitioner told her to go back into the building. She and the petitioner entered the small entry-foyer just inside the front door to the building. Petitioner held the victim at knifepoint and told her to give him her money. The victim opened her purse and "dumped into his hand" thirteen dollars contained in the purse. The victim testified that she was at that time "very, very shaky and in fear of my life and very terrified."

Petitioner then instructed the victim to take him to her apartment. The victim led petitioner to her second-floor apartment, still at knife-point, and opened the door with her key. When both the petitioner and she were inside the apartment, petitioner locked the door behind them. In the apartment, petitioner examined many of the victim's personal belongings and instructed her to bring some of her other belongings to him. The victim testified that at that time she was "starting to get very, very nervous."

Petitioner instructed the victim to go into the bathroom, he closed the door behind her, and he tied the door closed from the outside with a telephone cord. When the victim had managed to free herself from the bathroom, approximately fifteen minutes later, she discovered that many items of her personal property were, missing.

Petitioner contends that his activities constituted at most one crime of armed robbery, and that his conviction on two counts of armed robbery violates the Double Jeopardy Clause.

■ The Double Jeopardy clause prevents a defendant from being punished more than once for the same crime, and from being tried twice for the same crime. *United States v. Chagra*, 653 F.2d 26, 31 (1st Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). The Clause also prevents a state from convicting a defendant twice simply by dividing a single continuing offense into two separate offenses. *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977).

■ Whether a particular course of conduct involves one or more distinct offenses under a statute is a matter of legislative choice. *Sanabria v. United States*, 437 U.S. 54, 70, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43 (1978); *see also Brown v. Ohio*, 432 U.S. at 165, 97 S.Ct. at 2225. A state court's interpretation of the state's criminal statute is binding on a federal court. *See, e.g., Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1984); *Brown v. Ohio*, 432 U.S. at 167, 97 S.Ct. at 2226.

The Massachusetts Supreme Judicial Court examined the scope of the state's armed robbery statute, M.G.L. c. 265, § 17, recently in *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982). In that case, the defendant was accused of robbing a grocery store by pointing a gun at two employees and demanding money. The defendant was convicted and sentenced on two indictments of masked armed robbery—one indictment for robbery from the person of each employee. The defendant attacked the two convictions, arguing that, where a defendant is accused of taking the property of a single entity from more than one person in the course of a single incident, he may be convicted of only one "robbery."

The Supreme Judicial Court disagreed. The Court noted first that "the armed robbery statute, G.L. c. 265, § 17, is found under the chapter of the General Laws entitled 'Crimes against the Person,' rather than under the chapter (c. 266) entitled 'Crimes against Property.'" 385 Mass. at 348, 431 N.E.2d 928. The state legislature was not, according to the Court, "so much concerned with the larceny aspect of the crime of robbery as with its assault aspect." *Id.* It noted that in previous cases it had "stressed the assault aspect of the crime." *Id.* The Court ruled: "In light of the emphasis that the General Court and this court have placed on the assault element of the crime of robbery, we conclude that the 'offense' [of armed robbery] is against the person assaulted, and not against the entity that owns or possesses the property taken." 385 Mass. at 350–351, 431 N.E.2d 928.

In the present case, the Massachusetts Court of Appeals ruled that petitioner was properly convicted of two counts of armed robbery. That Court stated:

> There is nothing in *Commonwealth v. Levia,* ... which requires the conclusion that the defendant's acts, first in the foyer and then in the victim's apartment, were discrete parts of a single robbery.... Although the taking of the victim's money and property happened during a continuous period, the offenses occurred in two different places and under different circumstances. While no one but the defendant and the victim were [sic] in the foyer at the time of the robbery, the foyer, unlike the victim's apartment, was accessible to the public. The victim testified that she was afraid while she was in the foyer and that she became more frightened in her apartment. "The essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property ... from the protection which the person of that other affords." ... These two offenses are not "so closely related in fact as to constitute in substance but a single crime." (Citations omitted.).[3]

14 Mass.App. at 1021, 442 N.E.2d 31.

■ This Court cannot agree. Neither the fact that the property taken was located in two different places, nor the fact that some of the property taken was located in a public place, and some in a more private place, changes the nature of the assault perpetrated by the petitioner. Petitioner assaulted the victim with a knife when he first accosted her in the foyer. The record shows that he continued to threaten her with the knife during the entire course of the robbery. The threat did not become significantly more or less menacing during the course of the robbery. The record shows that petitioner engaged not in two separate assaults, but in one continuous assault for the purpose of taking the victim's property situated at two locations in the same building. I rule that, under the reading of the armed robbery statute set out in *Levia,* the state violated petitioner's rights under the Double Jeopardy Clause when it tried and sentenced him for two counts of armed robbery.

■ Petitioner was sentenced to identical concurrent prison terms on the two armed robbery convictions. An improper conviction under the Double Jeopardy Clause may work to the prejudice of a defendant even if it results in a concurrent sentence and does not increase his overall sentence for the crime. *See O'Clair v. United States,* 470 F.2d 1199, 1203 (1st Cir.1972), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973); *Commonwealth v. Jones,* 382 Mass. 387, 416 N.E.2d 502 (1981). Possible sources of

---

**3.** This Court is not bound by the ruling of the Appeals Court in this case. That court did not purport to decide whether the state legislature intended that activities such as petitioner's should be punished as two armed robberies under the statute. Rather, it ruled simply that the petitioner had committed two armed robberies under the statute as it had been interpreted by the Supreme Judicial Court. This Court may review such a ruling. *See Brown v. Ohio,* 432 U.S. at 169 & n. 8, 97 S.Ct. at 2227.

prejudice include the additional stigma of the second conviction, the possibility that it may be used to impeach petitioner's credibility should he give testimony in some future judicial proceeding, and the danger that a court in a later criminal matter might consider the second conviction in imposing a harsher sentence on petitioner than he might otherwise impose. *O'Clair v. United States*, 470 F.2d at 1203; *see also Benton v. Maryland*, 395 U.S. 784, 790–91, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969). For those reasons, I rule that petitioner's conviction and sentence on the second armed robbery indictment—indictment 05942—should be vacated, even though his sentence for that indictment runs concurrently with his sentence on the first armed robbery indictment.

Petitioner argues that this Court should order the trial court to retry the remaining indictments because of possible prejudice resulting from the second indictment for armed robbery. It is true that one of the principal dangers of trying a case as a series of indictments rather than as a single crime is that it may unduly prejudice the jury by creating the impression that the defendant has committed several crimes where he may actually have committed only one. *See, e.g., United States v. Carter*, 576 F.2d 1061, 1064 (3rd Cir.1978); *United States v. Frederick*, 551 F.Supp. 1035, 1042 (D.Kan.1982); *United States v. Brown*, 521 F.Supp. 511, 526 (W.D.Wis.1981). However, the only evidence presented at trial as to the defendant's identity was the uncontradicted and unimpeached testimony of the victim. Petitioner offered no evidence and called no witnesses. In light of the evidence presented at trial, and the miniscule likelihood of juror confusion, I rule that it is probable that the jury's deliberation was not prejudiced by the second indictment for armed robbery.

Moreover, the record shows that the trial judge was not prejudiced by the conviction on the second indictment in sentencing the petitioner. He sentenced petitioner to identical concurrent prison terms on both the robbery indictments and on the unlawful entry indictment. It appears from the record that the Court sentenced petitioner on the basis of the seriousness of plaintiff's violations taken as a whole, and there is nothing to indicate that he would have sentenced petitioner to a shorter prison term if the two armed robbery indictments had been merged into one. Because it is clear from the record that the conviction on the second armed robbery indictment did not cause the trial court to impose a harsher sentence on petitioner that he should have imposed otherwise, I rule that there is no need to remand to the trial court for resentencing on the remaining convictions. *See United States v. Michel*, 588 F.2d 986, 1001 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979); *United States v. Buckley*, 586 F.2d 498, 505 (5th Cir.1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *United States v. Slutsky*, 487 F.2d 832, 845 n. 18 (2d Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974).

Order accordingly.