COMMONWEALTH *vs.* VICTOR A. ANTONMARCHI.

No. 06-P-1106.

Hampden. May 3, 2007. - October 11, 2007.

Present: CYPHER, KANTROWITZ, & McHUGH, JJ.

*Home Invasion. Constitutional Law,* Double jeopardy. *Statute,* Construction. *Practice, Criminal,* Duplicative convictions.

At the trial of two indictments charging home invasion based on assaults on two victims following a single act of entry, the judge did not err in declining to dismiss one of the charges as duplicative, where the home invasion statute, G. L. c. 265, § 18C, clearly and unambiguously is concerned with the assault of persons in the invaded dwelling. [465-469]

INDICTMENTS found and returned in the Superior Court Department on February 26, 2003.

The cases were tried before *Daniel A. Ford,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. Convicted by a Superior Court jury of two charges of home invasion, G. L. c. 265, § 18C, and other crimes related to that invasion, the defendant appeals, claiming that one of the two home invasion convictions was duplicative and should be vacated.[1]

*Background.* Mary Jones,[2] whose home was invaded, and the defendant lived together until August, 2002, and thereafter remained friends and occasionally were intimate. On January 24,

---

[1] The other convictions were armed assault with intent to kill, as a lesser included offense under G. L. c. 265, § 18(*b*); and assault and battery by means of a dangerous weapon (a handgun), G. L. c. 265, § 15A(*c*)(i). The defendant was found not guilty on a charge of rape, G. L. c. 265, § 22(*b*).

[2] A pseudonym.

2003, Jones picked up the defendant at his place of employment and drove him to his home. At trial, she testified that she told him she was going out that evening and the defendant "wasn't happy."

Sometime after 9:00 A.M. the next morning, after receiving no response from Jones to his prolonged knocking on the front and rear doors, and ringing the doorbell of the building where she lived in Holyoke, the defendant entered through a living room window, and angrily confronted her. She testified that when she told him she had not opened the door because she was with a man, he asked, "why did I do that to him," and "[w]here is he?"

After taking a brief look around and seeing no one, the defendant pulled Jones into the bathroom, touched her "private parts," put his finger inside her, apparently "check[ing]" to determine whether she recently had sexual intercourse. He pushed her against the wall. Continuing his search, the defendant found a man, Jose Rivera, hiding in a bedroom closet, and pulled him out. A struggle between them followed. Rivera swung at the defendant with a metal clothes rod he had extracted from the closet. The defendant pointed a nine millimeter handgun[3] at Rivera and repeatedly hit him about the head with it, resulting in one shot being discharged, which grazed Rivera's head and caused him to fall to his knees, bleeding profusely. The struggle ended with the defendant falling on Rivera, who then suffered a broken ankle.[4]

At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on all the charges, particularly claiming that because the charges of home invasion were based on a single act of entry, he only should have been charged with one home invasion. In response to that claim, the

[3]The defendant was a loss prevention agent at a retail establishment, and was licensed to carry the firearm.

[4]The defendant presented a much different version of the events, largely based on his claim that Jones had permitted him to use her car in the past, and that he had permission to enter the apartment when she was not there. Thinking she was not at home, he entered to obtain the keys to the car. He claimed he inadvertently discovered Rivera in the closet, who came out swinging the metal clothes rod, so that his actions thereafter were defensive. It readily is apparent that the jury found much of this version not credible.

judge, essentially relying on *Commonwealth* v. *Melton,* 50 Mass. App. Ct. 637, 642-643 (2001), stated that application of a statute such as G. L. c. 265, § 18C, permits prosecution for each of multiple victims assaulted in a home invasion. In this appeal, the defendant no longer challenges the sufficiency of any evidence on *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), grounds, but maintains that it was error not to dismiss one of the charges of home invasion.[5]

*Discussion.* Claiming that the home invasion statute is an "anomaly," and that its plain meaning, and the interpretation of closely related statutes, indicate that its "purpose is to deter home invasions," the defendant asks that we interpret it, as the armed burglary statute, G. L. c. 266, § 14, has been interpreted, to permit only one conviction for entry in a dwelling, no matter how many assaults follow. Compare *Commonwealth* v. *Gordon,* 42 Mass. App. Ct. 601, 604-605 (1997).[6] No Massachusetts appellate decision has analyzed whether multiple convictions may be sustained under the home invasion statute, G. L. c. 265, § 18C.[7]

In addressing the issue, we are mindful of the proscription of the double jeopardy clause of the Fifth Amendment to the United States Constitution, but "few, if any, limitations are imposed by that clause on the legislative power to define offenses." *Commonwealth* v. *Levia,* 385 Mass. 345, 347 (1982).

---

[5]The jury were instructed that one indictment concerned Jones and the other concerned Rivera.

[6]In *Commonwealth* v. *Gordon,* 42 Mass. App. Ct. at 604, the court stated, "we borrow the analysis used by the court in [*Commonwealth* v.] *Levia*[, 385 Mass. 345 (1982),] but because of the nature of G. L. c. 266, § 14, we reach a different result." The court reasoned that because the "Legislature placed G. L. c. 266, § 14, in the chapter of General Laws entitled Crimes against Property," and that the statutory history of the crime indicates that it is essentially a crime against a person's possessory interest in his dwelling, the substantive crime is housebreaking, and concluded "when viewed from the perspective that the assault aggravates the burglary, there can be only one conviction under G. L. c. 266, § 14, for armed burglary, regardless of how many people the perpetrator assaults once inside the dwelling." *Id.* at 604-605. The Legislature has increased the punishment for aggravated forms of burglary, rather than "sanctioning the issuance of multiple indictments." *Id.* at 605 & n.4.

[7]The possibility of multiple convictions under G. L. c. 265, § 18C, was referred to with approval but not discussed in *Commonwealth* v. *Doucette,* 430 Mass. 461 (1999).

We begin with the wording of the statute. General Laws c. 265, § 18C, inserted by St. 1993, c. 333, states in relevant part:

> "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within[,[8]] while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished . . . ."

The defendant acknowledges that the "teaching of our cases is that, where the intent of the Legislature in the enactment of a criminal statute is primarily to protect the safety of individuals, as opposed to one's possessory interest in property, the number of victims determines the number of units of legitimate prosecution." *Commonwealth* v. *Melton*, 50 Mass. App. Ct. 637, 643 (2001), *S.C.*, 436 Mass. 291, 295 (2002).

"The appropriate inquiry in a case like this . . . asks what 'unit of prosecution' was intended by the Legislature as the punishable act. . . . The inquiry requires us look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution . . . keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor." *Commonwealth* v. *Rabb*, 431 Mass. 123, 128 (2000).

In *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58 (1997), the court determined that G. L. c. 265, § 18C, is not constitutionally vague and does not impose cruel and unusual punishment, taking into consideration the "nature of the offense of home invasion and the degree of harm to society that the statute seeks

---

[8]"We insert the bracketed comma for the reasons discussed in *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 61 (1997) (inserting a comma to avoid the 'absurd result' that its omission could permit interpreting § 18C's 'while armed with a dangerous weapon' clause to refer to the occupant of the dwelling rather than to the perpetrator)." *Commonwealth* v. *Ruiz*, 426 Mass. 391, 392 n.2 (1998).

to prevent." *Id.* at 63. The court stated that while the crime of home invasion is "akin to that of armed burglary, G. L. c. 266, § 14, and armed assault within a dwelling, G. L. c. 265, § 18A[,] . . . [w]hat sets home invasion apart from the other two crimes — and we think legitimately triggers a longer minimum sentence — is the additional element that the armed intruder knows, or should know, that an occupant is present before he enters the dwelling." *Id.* at 63-64. "The home invasion statute punishes more severely the armed intruder who invades another's dwelling while knowing that one or more individuals are present and then proceeds to assault those individuals." *Id.* at 64.

"These scienter requirements distinguish § 18C from § 18A." *Commonwealth* v. *Ruiz*, 426 Mass. 391, 393 (1998). Sections 18A and 18C "are functionally much closer than sections 18C and G. L. c. 266, § 14." *Id.* at 394 n.4.

Placement in the General Laws is a legitimate indication of the Legislature's intent. *Commonwealth* v. *Levia*, 385 Mass. at 347, considered whether the Legislature intended that the taking of money from two individuals in a single episode would constitute one or two robberies under G. L. c. 265, § 17. The court noted that the armed robbery statute appears in the "chapter of the General Laws entitled 'Crimes against the Person,' rather than under the chapter (c. 266) entitled 'Crimes against Property.' " *Id.* at 348. The court also noted it had "previously stressed the assault aspect of the crime" in *Commonwealth* v. *Weiner*, 255 Mass. 506 (1926). *Ibid.* The *Levia* court concluded, "[i]n light of the emphasis that the [Legislature] and this court have placed on the assault element of the crime of robbery, we conclude that the 'offense' is against the person assaulted, and not against the entity that owns or possesses the property taken." *Id.* at 350-351.

Here, the Legislature placed G. L. c. 265, § 18C, in c. 265, Crimes Against the Person. "Influential [in *Levia*] was the text of the defining statute which spoke of the 'person' as the object of protection; so also the fact that armed robbery falls under the statutory heading 'Crimes Against the Person.' "[9] *Commonwealth*

---

[9]Basic to our examination of the statute is the principle that where the

v. *Dello Iacono*, 20 Mass. App. Ct. 83, 89-90 (1985). So, too, we conclude in this case that the home invasion statute clearly and unambiguously is concerned with the assault of persons in the invaded dwelling. Moreover, the language of § 18C sets it apart from G. L. c. 266, § 14, and, when viewed in the light of *Levia*, we conclude that the unit of prosecution is the person assaulted.[10]

The reasoning of *Levia* was applied in *Commonwealth* v. *Doucette*, 430 Mass. 461 (1999), a case very similar to the present case. There, the defendant, armed with a knife, entered an apartment, assaulted one victim with mace and fought with him, and stabbed another. *Id.* at 463-464. He was convicted, inter alia, of two charges of armed home invasion, with one charge as the underlying felony for a conviction of felony-murder in the first degree. The "Commonwealth asserted that the defendant used force on persons in the apartment when he assaulted [two named persons]." *Id.* at 466. Citing *Commonwealth* v. *Levia*, 385 Mass. at 348, 351, as authority,[11] the court concluded that each charge of home invasion "alleged a separate and distinct offense, and, when proved, constituted a separate conviction under

statutory language is clear and unambiguous, we give that language its ordinary meaning. When that ordinary meaning "yields a workable result, there is no need to resort to extrinsic aids such as legislative history." *Bronstein* v. *Prudential Ins. Co. of Am.*, 390 Mass. 701, 704 (1984), and cases cited.

[10]It appears that the use of "any" in the home invasion statute — "uses force or threatens the imminent use of force upon any person within" — is significant in contrast to the use of "a" in the armed burglary statute, G. L. c. 266, § 14, — "actual assault on a person." "Any" is defined as: "One, some, every, or all without specification." American Heritage Dictionary 83 (3d ed. 1996). Contrast the definition of "a": "Used before nouns and noun phrases that denote a single but unspecified person or thing." *Id.* at 1.

[11]While the *Doucette* court did not elaborate on its reasoning for concluding the two home invasion charges were "separate and distinct" offenses and each constituted a "separate conviction," the citations to *Levia* are apt: the court in *Levia*, 385 Mass. at 348, construed the armed robbery statute as being concerned with the assault aspect of that crime, and, *id.* at 351, concluded that the " 'offense' is against the person assaulted."

The court in *Doucette* decided that one of the home invasion convictions was duplicative because it was the underlying felony in the conviction of felony-murder in the first degree. *Commonwealth* v. *Doucette*, 430 Mass. at 462. After vacating the duplicative home invasion conviction, the court affirmed the other, along with other convictions. *Id.* at 471.

G. L. c. 265, § 18C." *Id.* at 471.[12] *Doucette* is strong precedent for the result we reach in this case.[13]

*Judgments affirmed.*

---

[12]The Commonwealth and the defendant note that in sentencing the defendant, the judge was aware of what was termed in *Commonwealth* v. *Brown*, 431 Mass. 772, 780 (2000), the "problematic" nature of the sentencing provisions in § 18C, as amended by St. 1998, c. 180, § 57, but followed our decision in *Commonwealth* v. *Berte*, 57 Mass. App. Ct. 29, 33, 35 (2003), imposing concurrent terms of from twelve to fifteen years for the home invasion convictions. Neither the Commonwealth nor the defendant objected below, nor has either party raised any issue of sentencing on appeal.

[13]The defendant claimed at oral argument that the language in *Doucette*, referring to multiple charges of home invasion where there are multiple assaults but just one home invaded, is dicta because the language was not necessary to the holding. In *Doucette*, neither party mentioned in their briefs the issue of two convictions under G. L. c. 265, § 18C, being possibly duplicative. Although this language was not crucial to the issue before the court, especially when coupled with the court's reliance on *Levia*, it gives us a strong indication that the Supreme Judicial Court would conclude that the appropriate unit of prosecution is the number of individuals assaulted or threatened with the imminent use of force. See *Commonwealth* v. *Hall*, 48 Mass. App. Ct. 727, 731 (2000).