COMMONWEALTH vs. KELLY J. FLANAGAN.

No. 08-P-995.

Bristol. October 2, 2009. - March 15, 2010.

Present: GRASSO, FECTEAU, & HANLON, JJ.

*Constitutional Law,* Double jeopardy, Self-incrimination. *Motor Vehicle,* Operating to endanger, Operation, Operating under the influence. *Practice, Criminal,* Double jeopardy, Lesser included offense, Duplicative convictions, Comment by prosecutor, Instructions to jury, Jury and jurors, Mistrial. *Statute,* Construction. *Jury and Jurors.*

A criminal defendant's two separate convictions of causing serious bodily injury while operating a motor vehicle negligently and under the influence of alcohol, in violation of G. L. c. 90, § 24L(1), did not violate the prohibition against double jeopardy, where the Legislature, in enacting the statute, intended to adopt the judicial construction of G. L. c. 90, § 24G, that the appropriate unit of prosecution was the number of victims seriously injured by the defendant's negligent and intoxicated driving [460-461]; further, the defendant's conviction of one count of reckless operation of a motor vehicle, in violation of G. L. c. 90, § 24(2)(a), did not violate the prohibition against double jeopardy as a lesser included offense of the charge of causing serious bodily injury while operating negligently and under the influence of liquor, where the Commonwealth proceeded exclusively on a negligence theory of that charge, and therefore the reckless operation charge contained recklessness as an additional element [462-463].

A criminal defendant's convictions of causing serious bodily injury while operating a motor vehicle negligently and under the influence of alcohol and reckless operation were adequately supported by evidence that the defendant was driving the sport utility vehicle that collided head-on with another vehicle, and that alcohol impaired the defendant's ability to drive. [463-464]

At a criminal trial, a prosecutor's inquiry while cross-examining the defendant did not improperly infringe on the defendant's privilege against self-incrimination. [464-465]

At a criminal trial, there was no error in a judge's instruction to the jury defining operating under the influence of alcohol. [465]

At a criminal trial, a District Court judge did not abuse his discretion in denying the defendant's motion for a mistrial when, during jury deliberations, a juror alerted the judge that she recognized her signature on some medical records admitted in evidence, and was excused and replaced by an alternate. [466]

COMPLAINTS received and sworn to in the Taunton Division of the District Court Department on June 2 and June 3, 2004.

The cases were tried before *Kevan J. Cunningham*, J.

*Michael M. Harrington* for the defendant.

*Rachel J. Eisenhaure*, Assistant District Attorney, for the Commonwealth.

HANLON, J. The defendant appeals from guilty verdicts after a jury trial; she was convicted of two counts of causing serious bodily injury while operating a motor vehicle negligently and while under the influence of an intoxicating substance, G. L. c. 90, § 24L(1); and one count of reckless operation of a motor vehicle, G. L. c. 90, § 24(2)(*a*).[1] She argues that (1) her conviction of two violations of G. L. c. 90, § 24L(1), based upon injury to two different victims, violates her rights under the double jeopardy clause of the Fifth Amendment to the United States Constitution; (2) the reckless operation charge was a lesser included offense of the G. L. c. 90, § 24L(1), charges, resulting in duplicative convictions; (3) the prosecutor's cross-examination violated her privilege against self-incrimination; (4) the evidence offered was insufficient to sustain her convictions; (5) the judge's final instructions to the jury defining operating under the influence of alcohol were flawed; and (6) a mistrial should have been declared when a juror revealed that her signature appeared on one of the medical records admitted in evidence. We affirm the convictions.

*Facts.* The jury could have found the following facts. On April 29, 2004, at about 6:30 P.M., Kim Mello was driving a minivan on a four-lane highway with two of her daughters and one of her daughter's friends. A Dodge Durango sport utility vehicle (SUV) came toward her from the opposite direction and hit her car head-on. Mello and her sixteen year old daughter were seriously injured.[2]

---

[1]The defendant was also found responsible for a marked lanes violation, G. L. c. 89, § 4A.

[2]Mello suffered a severe compound fracture of her left leg, injuries to her left foot that required several surgeries, a lacerated liver, fractured ribs, and a concussion. She was hospitalized for two weeks and could not walk without assistance for five months. Her daughter, Ashley, who was also hospitalized for about two weeks, injured her left leg and right foot, had multiple surgeries, missed several months of school, and could not stand unassisted for about three months.

Eric Sousa was driving a short distance behind the SUV, with Michael Santos as his passenger; the road ahead was clear without any obstructions. The two men saw the SUV cross lanes into oncoming traffic and hit the right front fender of an Oldsmobile automobile traveling toward them. The SUV then continued into the next lane and hit Mello's minivan head-on. Sousa pulled to the side of the road and he and Santos went to help. Santos saw someone struggling, without success, from outside the SUV trying to get in to assist the occupant in the front. Eventually, that person opened the SUV's back hatch and climbed into the SUV. When Santos approached the SUV and looked inside, he saw only the defendant, with her back on the floor of the front passenger side and one of her legs on the front passenger seat and the other leg on the middle console. Apart from those who had gone into the SUV to help, Santos never saw anyone, other than the defendant, get out of the SUV.

Firefighter Robert Nolan arrived on the scene. He could not open either front door to the SUV and, after asking the responding bystander to step out, entered the SUV through a rear door and climbed over the seats to the front. Nolan observed the defendant lying on the floor of the SUV with her back on the front passenger side, her head up against the front passenger door, and her feet on the driver's side. The defendant was crying and sobbing and she said to him several times that she was in trouble, reiterating, "you don't understand, I'm in so much trouble, I'm in trouble." The "jaws of life" were needed to open the passenger side door to remove the defendant because the door was jammed into the doorframe. There were several signs in the SUV of alcohol use.[3] The defendant, who also was seriously injured in the crash, testified at trial that, although it was her car, it was not she, but her friend Wendy, who was driving the SUV.[4]

*Discussion.* a. *Double jeopardy.* The defendant makes two unsuccessful double jeopardy arguments: first, she maintains

---

[3]One sign of alcohol use was a "nip" bottle of Absolut Vodka recovered from the floor of the SUV under the place that the defendant had been lying. In addition, when Mello's husband, a registered nurse, arrived at the scene, he noticed that the defendant was slurring her words and that she had a strong scent of alcohol on her breath. Also, a responding police officer noticed an odor of alcohol in the SUV. When the defendant testified at the trial, she admitted to drinking at least one rum and coke earlier in the day.

[4]The defendant testified that she had driven to Fall River and encountered a

that although there were two people injured, she cannot be convicted of two separate violations of G. L. c. 90, § 24L(1), causing serious bodily injury while operating negligently and under the influence of alcohol,[5] because there was only one accident. She argues that the gravamen of the offense is causing an accident while under the influence of intoxicants; the serious bodily injury element is an aggravating factor only. Thus, she concludes, receiving two separate convictions, and two sentences, punishes her twice for committing the same offense.[6] Her second claim is that her conviction of reckless operation of a motor vehicle under G. L. c. 90, § 24(2)(a),[7] is an impermissible lesser included offense of the § 24L(1) charges.

"The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and

---

friend of a friend named Wendy. The two women had lunch at a pub, where the defendant had one rum and coke and ordered another, but did not finish it. The defendant was feeling sick after lunch and asked Wendy to drive the defendant's SUV to the mall to meet a mutual friend. After the accident, the defendant testified, Wendy got out of the car to get help. The defendant insisted that she had attempted to contact Wendy between the accident and the trial, but she could not do so because she did not know Wendy's last name, although she still was able to contact the mutual friend.

[5]General Laws c. 90, § 24L(1), inserted by St. 1986, c. 620, § 17, provides, in pertinent part: "Whoever, upon any way . . . operates a motor vehicle . . . while under the influence of intoxicating liquor . . . and so operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered, and by any such operation so described causes serious bodily injury, shall be punished . . . ."

[6]On each of the two § 24L(1) convictions, the defendant received concurrent sentences of two and one-half years in the house of correction, eighteen months to serve, and the balance suspended for three years. The Supreme Judicial Court "has said of concurrent sentences that 'while [a defendant] is technically serving more than one sentence, as a practical matter [she] is serving only one.' " Commonwealth v. Bruzzese, 437 Mass. 606, 613 (2002), citing Carlino v. Commissioner of Correction, 355 Mass. 159, 161 (1969). Nevertheless, such sentences are barred if imposed as multiple punishments for the same offense. See Commonwealth v. Jones, 382 Mass. 387, 395 (1981); Commonwealth v. Gunter, 427 Mass. 259, 275 (1998); Commonwealth v. Constantino, 443 Mass. 521, 527 (2005).

[7]General Laws c. 90, § 24(2)(a), as appearing in St. 1975, c. 156, § 1, provides in pertinent part: "Whoever upon any way . . . operates a motor vehicle recklessly, or . . . negligently so that the lives or safety of the public might be endangered . . . shall be punished . . . ."

multiple punishments for the same offense." *Commonwealth* v. *Crawford,* 430 Mass. 683, 686 (2000), quoting from *Mahoney* v. *Commonwealth,* 415 Mass. 278, 283 (1993). In this case, like the court in *Commonwealth* v. *Crawford,* we "are concerned with the third category of protection, which requires us to determine whether the Legislature intended to authorize imposition of multiple punishments for concurrent violations of the same statute arising out of a single transaction." *Commonwealth* v. *Crawford, supra.*

(1) *G. L. c. 90, § 24L(1).* Massachusetts cases interpreting various provisions of chapter 90 draw a distinction between those statutes addressed, on the one hand, to an action such as the operation of the vehicle or leaving the scene of an accident without making one's self known, and, on the other hand, to those primarily addressed to the resulting harm. Thus, in a prosecution for leaving the scene of an accident after causing injuries resulting in death, G. L. c. 90, § 24(2)($a^{1}/_{2}$)(2), the Supreme Judicial Court in *Commonwealth* v. *Constantino,* 443 Mass. 521, 524 (2005), held "that the proper 'unit of prosecution' under the statute is the act of leaving the scene of the accident, not the number of accident victims. . . . [T]he proscribed act is scene related, not victim related."

In *Constantino,* the court also held that for the crime of operating to endanger under G. L. c. 90, § 24(2)(*a*), "the proper unit of prosecution is the single act of operating a vehicle so as to endanger, not the number of victims of any ensuing accident. . . . As it is the conduct of operating a vehicle in a negligent manner so as to endanger the public that is proscribed, *not the act of harming another,* the defendant can be convicted only once." *Id.* at 527 (emphasis supplied). Significantly, the court noted that "a person may operate a vehicle in such a way that would endanger the public although no other person is on the street." *Id.* at 526-527.

In contrast, this court concluded in a motor vehicle homicide case, *Commonwealth* v. *Meehan,* 14 Mass. App. Ct. 1028, 1029 (1982), that "the Legislature intended that each death caused in one accident in violation of [G. L. c. 90,] § 24G[,] could be prosecuted and punished thereunder as a separate offense." The language of the statute at issue, § 24L(1), closely tracks the language of § 24G, the motor vehicle homicide statute, substi-

tuting the words "serious bodily injury" for the words "causing the death of another person." The defendant argues that the use of the words "another person" distinguishes § 24G from § 24L(1), and she finds some support in the language of *Commonwealth* v. *Meehan*, which states that the "deliberate use of [the] words ['another person'] signifies a legislative determination that the gravamen of the offense is the killing of a human being as distinguished from unlawful operation of a motor vehicle." *Ibid.* (internal citation omitted). Nevertheless, we are more persuaded that the gravamen of § 24L(1) is the injury caused to the person.

The language of the two statutes, § 24G and § 24L(1), is essentially the same. Moreover, as the Commonwealth points out, § 24L(1) was enacted in 1986, well after this court's 1982 *Meehan* decision. We presume that when the Legislature enacts a statute "it is 'aware of the prior state of the law as explicated by the decisions of [the] court,' *Commonwealth* v. *Callahan*, 440 Mass. 436, 441 (2003), and where it has reenacted statutory language without material change, they are 'presumed to have adopted the judicial construction put upon it.' *Nichols* v. *Vaughan*, 217 Mass. 548, 551 (1914)." *Commonwealth* v. *Colturi*, 448 Mass. 809, 812 (2007). When the Legislature tracked the language of § 24G in enacting § 24L(1), we reasonably infer it intended to adopt the judicial construction of the *Meehan* court that the appropriate unit of prosecution was the number of victims seriously injured by a defendant's negligent and intoxicated driving.

The language of § 24L(1) itself supports that view: "*Whoever . . . operates* a motor vehicle *. . . while under the influence of intoxicating liquor . . . and* so *operates* a motor vehicle *recklessly or negligently* so that the lives or safety of the public might be endangered, *and* by any such operation so described *causes serious bodily injury . . . .*" G. L. c. 90, § 24L(1) (emphasis supplied). Each of the three verbs in § 24L(1) describing the proscribed conduct is separated by "and," making each clause, including "causes serious bodily injury," an equal element of the crime described. Thus, the unit of prosecution is the injury caused to a victim by the defendant's impaired and negligent driving.[8]

---

[8]The view that the unit of prosecution is the number of victims has prevailed

(2) *Reckless operation as a lesser included offense.* The defendant's second double jeopardy claim, that her conviction of reckless operation of a motor vehicle under G. L. c. 90, § 24(2)(*a*), is an impermissible lesser included offense of the charge of causing serious bodily injury while operating negligently and under the influence of liquor under § 24L(1), also fails. "The traditional rule in Massachusetts, as embodied in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), . . . and its progeny, is that 'a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not.' As long as each offense requires proof of an additional element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative].' " *Commonwealth* v. *Vick*, 454 Mass. 418, 431 (2009) (citations omitted). See *Commonwealth* v. *Buckley*, ante 123, 126-128 (2010).

In this case, in one count, the defendant was charged with *reckless* operation of a motor vehicle in violation of G. L. c. 90, § 24(2)(*a*), and in the two other counts, she was charged, as the judge instructed the jury, with "causing serious bodily injury by operating a motor vehicle while under the influence of intoxicating liquor, and by operating it *negligently* so the lives or safety of the public might be in danger" in violation of G. L. c. 90, § 24L(1).

"A crime is a lesser included offense only if all the formal elements of the lesser crime are comprised within the greater crime. If the lesser crime requires proof of an additional fact that the greater crime does not, then it is not a lesser included

---

in other contexts as well. See *Commonwealth* v. *Levia*, 385 Mass. 345, 350-351 (1982) ("In light of the emphasis that the General Court and this court have placed on the assault element of the crime of robbery, we conclude that the 'offense' is against the person assaulted, and not against the entity that owns or possesses the property taken"); *Commonwealth* v. *Crawford*, 430 Mass. at 687 ("There is no merit to the defendant's contention that he may not be punished for two homicides when he fired only one shot"). Cf. *Commonwealth* v. *Donovan*, 395 Mass. 20, 28-29 (1985) (on the issue of "whether the Legislature intended to authorize more than a single conviction for the larcenous scheme at issue . . . [the court concluded that] the Legislature intended that only a single crime be charged").

offense of the greater crime." *Commonwealth* v. *Murray*, 51 Mass. App. Ct. 57, 60 (2001) (citation omitted).

Under § 24L(1), the Commonwealth was required to show that the defendant (1) operated a motor vehicle, (2) upon a public way, (3) while under the influence of intoxicating liquor, (4) operated a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered, and (5) by such operation so described caused serious bodily injury. At trial, on the two § 24L(1) counts, the Commonwealth proceeded exclusively on a negligence theory and the judge so instructed the jury.

Under § 24(2)(*a*), the Commonwealth must show that the defendant "(1) operated a motor vehicle, (2) upon a public way, (3) (recklessly or) negligently so that the lives or safety of the public might be endangered." *Commonwealth* v. *Duffy*, 62 Mass. App. Ct. 921, 921 (2004). As to this count, the defendant was charged and the Commonwealth proceeded only under a theory of recklessness.

The judge, in his instructions to the jury, carefully delineated the difference between negligence and recklessness,[9] and that distinction has been upheld for motor vehicle homicide cases. See *Commonwealth* v. *Jones*, 382 Mass. 387, 389 (1981) ("Under G. L. c. 90, § 24G, homicide by motor vehicle may be committed in any one of three ways. The defendant may cause a death by operating under the influence of intoxicating liquor; by operating negligently; or by operating recklessly. The three ways are stated disjunctively and created separate and independent grounds for prosecution"). As the case was submitted to the jury, each charge under § 24L(1) and § 24(2)(*a*) contained an element that the other did not. We find no error.

b. *Other claims.* (1) *Sufficiency of the evidence.* Viewing the evidence in the light most favorable to the Commonwealth, a

---

[9]On the § 24(2)(*a*) reckless operation charge, the judge instructed the jury, "It is not enough for the Commonwealth to prove that the Defendant acted negligently, that is acted in a way that a reasonably careful person would not. It must be shown that the Defendant's actions went beyond mere negligent and amounted to recklessness. The Defendant was reckless if she knew or should have known that such actions would pose a grave danger of death or serious injury to others, but she chose, nevertheless to run the risk and go ahead."

rational jury could have found that the defendant was the driver of the SUV when it hit the minivan and that the defendant's capacity was diminished due to her consumption of alcohol.[10] See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

The Commonwealth produced a strong, albeit circumstantial, case that the defendant was driving the SUV at the time of the accident. Immediately after the accident, no one responding saw any person, other than the defendant, in the SUV or emerging from it; no responder could open either of the front doors to the SUV; the jaws of life were required to remove the defendant from the SUV; the defendant was found in a position on the floor of the SUV that was not inconsistent with her having been the operator; and the defendant made what could be described as admissions to a responding firefighter. "Circumstantial evidence is competent to establish guilt beyond a reasonable doubt and reasonable inferences may be drawn from the evidence." *Commonwealth* v. *White*, 452 Mass. 133, 135 (2008) (citation omitted).

The evidence that alcohol impaired the defendant's ability to drive was even stronger and plainly supported the jury's verdict. See *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 923, 927 (1991) (evidence of driving on wrong side of road and head-on collision among factors warranting determination of impairment from alcohol). See also *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 21-22 (1996), citing *Commonwealth* v. *Hilton*, 398 Mass. 63, 68 (1986).

(2) *Right to remain silent.* The defendant testified at trial that after the accident, she called the police several times attempting to locate a purse that she had left in the SUV when she was transported by ambulance to the hospital. On cross-examination, the prosecutor asked her twice whether, when she called, she had told the police that Wendy was driving the car. She said that she had not. At the time of the calls to the police, the defendant had been cited for both criminal and civil motor vehicle offenses, but she had not been arrested and she was not in custody. Defense counsel objected to the prosecutor's second

---

[10]The defendant does not challenge the elements of public way or serious bodily injury.

question, the judge cautioned the prosecutor not to pursue the issue any further, and the prosecutor immediately changed the subject. There was no request that the testimony be struck or for a limiting or curative instruction.

The prosecutor's questioning was not improper. While the defendant had no obligation to say anything at all to the police, here, she voluntarily initiated contact with them, and, in so doing, waived her right to remain silent, at least as to that conversation. In the conversation, she asked about her missing purse, but not, apparently, about her missing friend. "What the defendant thereafter chose to say or not say to each officer on the subject could properly be commented on by the prosecutor to expose inconsistencies." *Commonwealth* v. *Guy*, 441 Mass. 96, 104 (2004). See *Commonwealth* v. *Rivera*, 425 Mass. 633, 639 (1997) ("A defendant who takes the witness stand . . . is subject to the ordinary rigors of proper cross-examination, including questioning about prior inconsistent statements voluntarily made").

Even were we to assume that the prosecutor's questioning came too close to commenting upon the defendant's right to remain silent — a finding we do not make — we would discern no harm to the defendant. The judge intervened and the prosecutor did not argue the point in closing. In addition, the Commonwealth's case against the defendant was very strong.

(3) *Jury instruction.* The defendant now objects to a portion of the judge's final instructions to the jury defining operating under the influence of alcohol.[11] The challenged language appeared verbatim in instruction 5:10 of the 1995 District Court model jury instructions. See Model Jury Instructions for Use in the District Court, Instruction 5:10 (1995). At the time of the trial, the instruction had replaced the language, "The purpose of the statute is to protect the public from any driver whose alertness," with, "A driver is 'under the influence' if that driver's alertness." See Model Jury Instruction for Use in the District Court, Instruction 5:10 (2004). At trial, defense counsel neither objected nor suggested other language.[12] We see no error.

---

[11]She objects to the language: "The purpose of the statute is to protect the public from any driver whose alertness, judgment and ability to respond properly have been lessened by alcohol."

[12]In fact, in response to the judge's postcharge inquiry, defense counsel said, "They were great. They hit every point I wanted to raise. Thank you."

(4) *Expert juror.* Ten minutes into the jury deliberations, the judge was told that one of the jurors recognized her signature on some of the medical records. She had no memory of the defendant at all. She had told the foreman in the presence of the other jurors that she recognized her signature; however, she had not said what records, nor had she told them her name. The judge excused the juror, replaced her with an alternate, told the other jurors not to speculate about which exhibit carried the juror's signature, and ordered the jury to begin deliberations anew. The defendant objected and asked for a mistrial, arguing that the fact that the juror's signature appeared on some of the records could lend credibility to them. The judge pointed out that all of the records had been admitted by agreement, and he found no prejudice to either side, particularly in light of the fact that the remaining jurors did not know which document contained the excused juror's signature. See *Commonwealth* v. *Kincaid*, 444 Mass. 381, 386 (2005), quoting from *Commonwealth* v. *Fidler*, 377 Mass. 192, 201 (1979) ("the defendant 'bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter' "). He denied the motion for a mistrial.

"The decision whether to declare a mistrial is within the discretion of the trial judge," *Commonwealth* v. *Bryant*, 447 Mass. 494, 503 (2006), and we see no abuse of discretion.

*Judgments affirmed.*