## COMMONWEALTH *vs.* HRISTO BOTEV.

No. 10-P-889.

Norfolk. November 10, 2010. - April 15, 2011.

Present: COHEN, BROWN, & KATZMANN, JJ.

*Identification. Practice, Criminal,* Identification of defendant in courtroom. *Evidence,* Identification, Photograph. *Practice, Criminal,* Duplicative punishment. *Constitutional Law,* Double jeopardy. *Statute,* Construction. *Open and Gross Lewdness and Lascivious Behavior.*

At the trial of a criminal complaint charging two counts of open and gross lewdness in violation of G. L. c. 272, § 16, the judge did not err in admitting in evidence the victims' in-court identifications, where the Commonwealth met its burden of establishing by clear and convincing evidence that the identifications were based on a source independent of a photographic array that had been suppressed on the ground that it was impermissibly suggestive. [283-285]

This court concluded that G. L. c. 272, § 16, which prohibits open and gross lewdness, was intended by the Legislature to authorize a single penalty for a single incident of open and gross lewdness resulting in shock and alarm to more than one person; therefore, where the Commonwealth tried a criminal defendant for a single course of conduct involving two victims, the two resulting convictions were duplicative and could not stand. [285-289]

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on November 18, 2008.

A pretrial motion to suppress evidence was heard by *Stephen S. Ostrach,* J., and the case was heard by him.

*Dana Alan Curhan* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

COHEN, J. After a jury-waived trial in the District Court in February, 2010, the defendant was convicted and sentenced on two counts of open and gross lewdness, in violation of G. L.

c. 272, § 16.[1,2] In this appeal, the defendant argues (1) that the victims should not have been allowed to identify him at trial, and (2) that his convictions are duplicative. We conclude that there was no error in the admission of the victims' in-court identifications; however, we agree with the defendant that only one of his convictions of open and gross lewdness can stand.

*Background.* On November 14, 2008, at approximately 6:00 P.M., two fifteen year old girls were sitting on swings in a town park in Millis. They turned around and saw a man on a bench behind them. One of the girls became startled when he stood up. She screamed, and then said, "Sorry, I didn't see you there." The man said nothing and sat down.

As the girls got up to leave, the man, speaking with what one of the girls described as a foreign accent, told them to wait. When the girls turned towards him, they noticed that his penis was exposed and that he was moving his hand up and down near his genitals. The girls saw him doing this for about ten seconds, and then ran away. As they began to run, the man took off in the opposite direction, his bare buttocks visible. The girls had observed the defendant for a total of about forty-five seconds, at a distance of about fifteen feet.

The girls immediately went to the police station, where they reported the incident and described the man as wearing a bright orange hat, a beige jacket, and white shoes. Officer John Shearns went to the park and looked around the area. He found no one matching the description he was given, but, about thirty minutes into his investigation, came upon the defendant about one-quarter mile from the park, near an apartment complex. The defendant was wearing a T-shirt, sneakers, and what Officer

---

[1] On count 1, the defendant was sentenced to two years in a house of correction, with sixty days to serve and the balance suspended for three years. On count 2, he was sentenced to a concurrent term of probation. We were informed at oral argument that the defendant has completed service of the house of correction portion of his sentence.

[2] The defendant also was convicted of two counts of lewd and lascivious behavior (counts 3 and 4) in violation of G. L. c. 272, § 53. These convictions were placed on file, the prosecutor informing the judge that they were lesser included offenses of c. 272, § 16. Although counts 3 and 4 were placed on file, "[t]he record does not reveal the defendant's affirmative assent to the filing." *Commonwealth* v. *Petersen,* 67 Mass. App. Ct. 49, 54 n.9 (2006). See Mass.R.Crim.P. 28(e), as amended, 453 Mass. 1501 (2009).

Shearns described as boxer shorts underwear that had an opening in the crotch. The defendant stated that he was coming from his home in the apartment complex, was going out for a jog, and that he considered the shorts to be running shorts.

The officer did not arrest the defendant at that time, but included a picture of him in an array of six photographs that was presented to each of the victims separately. After viewing the photographs, one victim stated that the defendant's picture "looks most familiar," and the other stated that it "looks most like him." Thereafter, the defendant was arrested.

The defendant moved to suppress the photo array, claiming that it was impermissibly suggestive. The motion judge, who was the same judge who later presided over the defendant's jury-waived trial, allowed the motion, but expressly stated in his ruling that the "Comm[onwealth] retain[ed] [the] right to offer identification at trial provided it can show an independent basis." The defendant then filed a motion in limine requesting a nonsuggestive identification hearing. In acting upon the motion, the judge granted the defendant a nonsuggestive identification *procedure* — a resolution to which the defendant did not object.

As described in the trial testimony of Detective Dominic Tiberi of the Millis police department, the procedure took place at the courthouse, approximately one year after the incident in the park. Between fifty to seventy people were seated in the first session courtroom. An assistant district attorney explained to the victims that they would be entering the courtroom to see if they observed the defendant and, if they did, they should so inform Detective Tiberi, who would accompany them. The detective then took the victims, one at a time, into the courtroom — where independently, and out of each other's presence, each of them picked out the defendant from the crowd. The victims subsequently identified the defendant at his bench trial, without any objection.

*Discussion.* 1. *In-court identifications.* The defendant argues that the victims' in-court identifications should not have been admitted because they were not shown to be based on a source independent of the suppressed photo array. Because there was no objection at trial, we review only to determine if any error resulted in a substantial risk of a miscarriage of justice. See

*Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Whelton*, 428 Mass. 24, 25 (1998). For the in-court identifications to be admissible, it was the Commonwealth's burden to establish by clear and convincing evidence that they were based upon an independent source. See *Commonwealth* v. *Botelho*, 369 Mass. 860, 868 (1976). Whether the Commonwealth met its burden was a question of fact for the trial judge. *Commonwealth* v. *Roberts*, 362 Mass. 357, 364 (1972).

Here, the judge made no explicit findings or ruling on the question of the admissibility of the identifications. Contrast *United States* v. *Crews*, 445 U.S. 463, 473 (1980); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 465-466, cert. denied sub nom. *Pirrotta* v. *Massachusetts*, 479 U.S. 838 (1986). However, it is manifest from his comments at the suppression hearing and his indorsement on the motion to suppress that he fully intended that the trier of fact (here, the judge, himself) would be permitted to consider the victims' in-court identifications only if shown by the Commonwealth to be based upon an independent source. It also is manifest from the trial transcript that the judge had a sound basis to conclude, as he implicitly did, that the Commonwealth had met its burden.

When considering whether an independent source exists, typically the most important factor is the extent of the witness's opportunity to observe the defendant at the time of the crime. "Clearly the firmer the contemporaneous impression, the less is the witness subject to be influenced by subsequent events." *Commonwealth* v. *MacMillan*, 5 Mass. App. Ct. 314, 319 (1977), quoting from *Allen* v. *Moore*, 453 F.2d 970, 975 (1st Cir.), cert. denied, 406 U.S. 969 (1972). Here, the victims testified that they saw the defendant for approximately forty-five seconds and at close range (about fifteen feet). See *Commonwealth* v. *Cefalo*, 357 Mass. 255, 257 (1970) (witness viewed defendant at close range for thirty to sixty seconds); *Commonwealth* v. *Bodden*, 391 Mass. 356, 361-362 (1984), and cases cited; *Commonwealth* v. *Riley*, 26 Mass. App. Ct. 550, 554 (1988). Furthermore, given that the photo array had elicited only relative identifications from both victims ("looks most familiar" and "looks most like him"), the testimony that both girls were

able to select the defendant from a sizeable crowd a year after the incident provided additional confirmation that they each had an independent recollection of his appearance. Cf. *Commonwealth* v. *Marks*, 12 Mass. App. Ct. 511, 514-515 & n.5 (1981).

There is no merit to the defendant's unpreserved claim that the judge should not have ordered a nonsuggestive identification procedure in lieu of the nonsuggestive identification hearing requested by the defendant in his written motion. Particularly where there was no objection, it was within the judge's discretion to proceed in this fashion. See generally *Commonwealth* v. *Jones*, 362 Mass. 497, 501-502 (1972).

We also are unpersuaded by the defendant's general claim that this is likely a case of mistaken identity. In addition to the victims' observation of the man in the park for forty-five seconds at a reasonably close distance and their identifications of the defendant during the nonsuggestive procedure, there was other corroboration that the defendant was the man in the park. Consistent with the testimony of one of the victims that the man spoke with a foreign accent, there was evidence that the defendant, who testified at trial through an interpreter, is a native of Bulgaria who had come to work in the United States five years prior to trial. Also of some relevance was the testimony of Officer Shearns that the defendant, who lived close by and had time to alter his attire, was found in the vicinity, oddly clad in underwear, one-half hour into the officer's investigation.

2. *Duplicative charges.* The defendant contends that his convictions of two separate violations of G. L. c. 272, § 16, violate his right to be free of double jeopardy. "The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Commonwealth* v. *Constantino*, 443 Mass. 521, 523 (2005), quoting from *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283 (1993). Here, we are concerned with the third category of protection: the issue presented is whether the Legislature intended to authorize the imposition of multiple punishments for a single incident of open and gross lewdness resulting in

shock and alarm to more than one person, or whether it intended that a single penalty attach to the unlawful conduct.

"The appropriate inquiry in a case like this . . . asks what 'unit of prosecution' was intended by the Legislature as the punishable act. . . . The inquiry requires us to look to the language and purpose of the statute[], to see whether [it] speak[s] directly to the issue of the appropriate unit of prosecution . . . keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor." *Commonwealth* v. *Antonmarchi*, 70 Mass. App. Ct. 463, 466 (2007), quoting from *Commonwealth* v. *Rabb*, 431 Mass. 123, 128 (2000).

In performing this analysis, our cases distinguish between statutes focused upon the prevention of violence or physical injury to others and statutes more generally focused upon the defendant's conduct. So, for example, in *Commonwealth* v. *Meehan*, 14 Mass. App. Ct. 1028 (1982), it was held proper to charge the defendant with motor vehicle homicide for each death resulting from a single accident, because the gravamen of the offense was the killing of a human being rather than the unlawful operation of the vehicle[3]; but in *Commonwealth* v. *Constantino*, 443 Mass. at 526, even though two persons were killed, it was error to convict the defendant of two counts each of leaving the scene of an accident and driving to endanger (a lesser included offense of vehicular homicide, of which the defendant was acquitted), because the convictions were for crimes directed at behavior: leaving the scene and operating a motor vehicle in a manner dangerous to the public.[4]

With this framework in mind, we turn to the statute at issue

---

[3]To the same effect is *Commonwealth* v. *Flanagan*, 76 Mass. App. Ct. 456, 460-461 (2010), holding that the number of victims is the appropriate unit of prosecution for the crime of causing serious bodily injury while operating negligently and under the influence of alcohol.

[4]For another illustrative comparison, see *Commonwealth* v. *Levia*, 385 Mass. 345, 351 (1982), where it was held that armed robbery of two individuals in a single episode appropriately was charged as two crimes, and *Commonwealth* v. *Donovan*, 395 Mass. 20, 27, 31 (1985), where the defendant's larcenous scheme of attaching a phony night deposit box to a bank on a single evening was considered to be a single crime, even though property was taken from several depositors. See also *Commonwealth* v. *Crawford*, 430 Mass. 683, 686 (2000), citing *Levia* and *Donovan* for the proposition that multiple indictments and punishments are appropriate if a single criminal transaction gives

here. General Laws c. 272, § 16, was enacted in 1784, and "has remained essentially unchanged for more than 200 years." *Commonwealth* v. *Ora,* 451 Mass. 125, 126 (2008). Section 16, as amended by St. 1987, c. 43, provides:

> "A man or woman, married or unmarried, who is guilty of open and gross lewdness and lascivious behavior, shall be punished by imprisonment in the state prison for not more than three years or in jail for not more than two years or by a fine of not more than three hundred dollars."

By its terms, § 16 is not directed at the prevention of violence or physical injury to another. Rather, it describes the offense in terms of the defendant's actions. Furthermore, because "[p]lacement in the General Laws is a legitimate indication of the Legislature's intent," *Commonwealth* v. *Antonmarchi,* 70 Mass. App. Ct. at 467, it is significant that § 16 is placed in a chapter devoted to "Crimes Against Chastity, Morality, Decency and Good Order," thereby bolstering the conclusion that its concern is punishing the defendant for conduct offensive to society, as distinct from punishing the defendant for the effect of that conduct on particular victims. Compare *Commonwealth* v. *Antonmarchi, supra* at 467-468, where the placement of G. L. c. 265, § 18C, in a chapter of the General Laws devoted to "Crimes Against the Person" confirmed the conclusion that the home invasion statute is concerned with the assault on persons in the invaded dwelling and that the unit of prosecution therefore is the number of persons assaulted.

We recognize that G. L. c. 272, § 16, has been construed by our case law to require, among other things, that one or more persons in fact be shocked or alarmed by the defendant's conduct.[5] See, e.g, *Commonwealth* v. *Fitta,* 391 Mass. 394, 396 (1984); *Commonwealth* v. *Kessler,* 442 Mass. 770, 773 (2004).

_____

rise to crimes of violence committed against multiple victims, and upholding separate sentences imposed on the defendant for killing both a woman and her viable fetus with a single shot.

[5]As augmented by judicial decision, c. 272, § 16, requires proof of five elements: "(1) the defendant exposed his or her, genitals, buttocks, or female breasts to one or more persons; (2) the defendant did so intentionally; (3) the defendant did so 'openly,' that is, either he or she intended public exposure, or he or she recklessly disregarded a substantial risk of public exposure, to others who might be offended by such conduct; (4) the defendant's act was done in such a way as to produce alarm or shock; and (5) one or more persons were in

This impact requirement has remained unchanged since 1880. *Commonwealth* v. *Quinn*, 439 Mass. 492, 496 & n.9 (2003), citing *Commonwealth* v. *Wardell*, 128 Mass. 52, 53 (1880). However, it has no apparent bearing on the unit of prosecution. The judicial engraftment of the impact element of the crime insures that the conduct in question indeed is of a character warranting a felony conviction under G. L. c. 272, § 16, as distinct from a misdemeanor conviction under G. L. c. 272, § 53. *Commonwealth* v. *Kessler*, 442 Mass. at 774-775.[6] However, there has never been any suggestion in our case law that the impact element was meant to alter the objective of the statute from that of criminalizing behavior offensive to society generally to that of imposing punishment based on the number of individual victims. To the contrary, as stated in *Commonwealth* v. *Wardell*, 128 Mass. at 54, "The *offence* created [notably expressed in the singular] does not depend on the number present. It is enough if it be an intentional act of lewd exposure, offensive to *one or more* persons present" (emphasis added).

Moreover, we observe that, although it is not directly reflective of the Legislature's intent, § 16 routinely is applied in a manner consistent with the view that the unit of prosecution is conduct-based and not victim-based. See, e.g., *Commonwealth* v. *Fitta*, 391 Mass. 394 (1984) (single charge when man exposed himself to two boys); *Commonwealth* v. *Arthur*, 420 Mass. 535 (1995) (single charge where man exposed himself to a mother and daughter); *Commonwealth* v. *Quinn*, 439 Mass. 492 (2003) (single charge when man exposed his buttocks to four girls); *Commonwealth* v. *Whiting*, 58 Mass. App. Ct. 918, 919 & n.2 (2003) (all but one charge under § 16 dismissed as duplicative by trial judge when six people witnessed man's nudity); *Commonwealth* v. *Militello*, 66 Mass. App. Ct. 325 (2006) (single charge where four boys witnessed defendant's nudity). Furthermore, as the defendant points out, a contrary application of the statute could have absurd results, e.g., if a person were to run

fact alarmed or shocked by the defendant's exposing himself or herself." *Commonwealth* v. *Quinn*, 439 Mass. 492, 501 (2003).

[6]It also prevents the statute from applying to expressive conduct that is offered to a willing audience and that falls within the ambit of the First Amendment. See *Commonwealth* v. *Ora*, 451 Mass. at 126-129. See also *Revere* v. *Aucella*, 369 Mass. 138, 142-143 (1975).

onto the field at Fenway Park during a game and intentionally expose himself in a way that produced shock or alarm, he conceivably could be charged with as many as 37,000 counts of open and gross lewdness. We decline to view the statute as permitting such an unreasonable result. See generally *Molly A.* v. *Commissioner of the Dept. of Mental Retardation,* 69 Mass. App. Ct. 267, 282 (2007).

The Commonwealth makes a one-sentence alternative argument that the defendant's convictions may be viewed as based upon two separate actions — the exposure of his genitals and the exposure of his buttocks as he ran away. It is evident from the transcript, however, that the case was tried as involving a single course of conduct. Neither victim was asked by the prosecutor about her reaction to discrete parts of the episode: one victim made no mention of seeing the defendant's buttocks and testified only to her shock at the sight of his penis and hand motions; the other testified only to her shock at the incident as a whole. On this record, where the Commonwealth did not establish two distinct, conduct-based offenses, the judge could not have decided the case on that basis. The only conceivable rationale for the two separate convictions is the one we now reject, i.e., that there were two victims. Accordingly, the defendant's two convictions for open and gross lewdness under G. L. c. 272, § 16, cannot stand.

*Conclusion.* The judgment of conviction on count 1 is affirmed. The judgment on count 2 and the findings on counts 2, 3, and 4 are vacated, and the charges as to those counts are dismissed.[7] The case is remanded to the District Court for a determination whether the sentence imposed on count 1 is still appropriate and, if not, for vacation of the sentence imposed and for resentencing.

*So ordered.*

---

[7] As to counts 3 and 4, the lesser included offenses placed on file, see *Commonwealth* v. *Chappee,* 397 Mass. 508, 523-524 (1986), citing *Morey* v. *Commonwealth,* 108 Mass. 433, 434-435 (1871).